Opinion issued October 6, 2005














 



                                                            
In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-00984-CV
____________
 
AAA OFFICE COFFEE SERVICE, INC., Appellant

V.

DEBRA K. HANSEN, DEBBIE CLODFELTER, and RICK CLODFELTER,
Appellees




On Appeal from the 152nd District Court 
Harris County, Texas
Trial Court Cause No. 2002-07132


 
 
MEMORANDUM OPINION
          Appellant, AAA Office Coffee Services, Inc. (“AAA”), challenges the trial
court’s judgment, entered after a jury trial, awarding appellees, Debra K. Hansen,
Debbie Clodfelter, and Rick Clodfelter, damages for sexual harassment, retaliation,
and employment discrimination. In eight of its ten points of error, AAA contends that
the evidence was legally and factually insufficient to support the jury’s findings that
Hansen and Debbie Clodfelter were subjected to sexual harassment by AAA; that a
discriminatory practice motivated AAA’s decision to fire Hansen and the Clodfelters;
and that AAA acted with malice or reckless indifference to the rights of Hansen and
the Clodfelters. In its two other points of error, AAA contends that the trial court
erred in overruling AAA’s motion for new trial and motion for judgment
notwithstanding the verdict because the evidence established as a matter of law, or
the overwhelming weight of the evidence established, that AAA was excused from
responsibility for the sexual harassment against Hansen and Debbie Clodfelter. We
affirm. 
                                                             Factual and Procedural Background
          Appellees filed suit against AAA alleging violations of the Texas Labor Code



and various other statutory and common law torts. A jury found that appellees
Hansen and Debbie Clodfelter were subjected to sexual harassment at AAA; that
AAA was not legally excused from responsibility for the sexual harassment; that
appellees’ opposition to AAA’s discriminatory practice, the making or filing of a
charge of discrimination, or the filing of a complaint was a motivating factor in
AAA’s decision to fire appellees; and that appellees were entitled to recover actual
and exemplary damages. The jury awarded $7,500 for lost wages and compensatory
damages to Hansen, $8,200 for lost wages and compensatory damages to Debbie
Clodfelter, and $1,000 for lost wages to Rick Clodfelter. The jury also awarded
$25,000 in exemplary damages to Hansen, $45,000 in exemplary damages to Debbie
Clodfelter, and $15,000 in exemplary damages to Rick Clodfelter. The trial court
rendered judgment on the verdict. 
          During trial, Hansen testified that she started working for AAA in 1993,
voluntarily left in 1996 for personal reasons, and was re-hired by Carl Carter, a AAA
district manager, in September of 2000. Hansen worked as a driver under the direct
supervision of Carter. Upon her return to AAA, Carter began sexually harassing
Hansen.


 The first major incident occurred in November 2000 when Carter told
Hansen that he had been thinking about a hug that they had shared before Hansen left
AAA in 1996. In response to Carter’s comment, Hansen explained to him that the
hug did not mean anything and that she was sorry if he had taken the hug the wrong
way. Subsequently, Carter began making sexually explicit jokes to Hansen, three to
four times a day, about women having sex with animals, men, and women. Hansen
found the jokes to be inappropriate and offensive. Hansen told Carter that his jokes
were inappropriate and made her feel uncomfortable and that she did not want to hear
the jokes. Hansen stated that she would walk away from Carter as he was telling the
jokes. Hansen did not immediately report Carter’s behavior to anyone else at AAA
because he was her boss, she did not want to get fired, and she did not want to trigger
his anger.  
          Hansen also testified that Carter physically touched her. Carter had patted her
on “the butt” five to seven times, and she felt degraded by these touches. On several
occasions, Carter reached inside her shirt pocket and grabbed a pencil or piece of
paper, while making it a point to intentionally rub her breasts. In response, Hansen
would pull away from Carter and knock his hands away, and Carter found this
amusing. Hansen felt physically threatened by Carter’s touching. When Carter told
Hansen that she had a “fine ass,” Hansen felt degraded and told Carter that the
comment was inappropriate. Carter also asked Hansen questions about her personal
sex life. For example, Carter asked Hansen if she was scared to get diseases by
sleeping with different people. Carter also asked Hansen if it was sexually frustrating
living alone. 
          Hansen explained that after an incident in which Carter had yelled at her in the
warehouse, she commented on Carter’s inappropriate behavior to Carl Sackett, a
vending manager for AAA. After Hansen informed Sackett about Carter’s behavior,
Carter’s inappropriate conduct and comments continued. Hansen also explained that
she told Sackett about another incident, which occurred sometime in late February or
March 2001, in which Carter came out of another employee’s office with a sausage
hanging out of his unzipped pants. She felt this behavior was inappropriate and
offensive. She spoke with Debbie Clodfelter, the other employee subjected to the
incident, and Debbie Clodfelter also appeared offended and angry. When Hansen and
Debbie Clodfelter reported this incident to Sackett shortly after the incident, Hansen
asked Sackett that he not tell Carter about her complaint so that she could avoid any
repercussions from Carter, but she did not object when Sackett informed her that he
would need to report the incident. However, the record established that Sackett
delayed in reporting the incident until after receiving formal written complaints from
Hansen’s lawyer. 
          Hansen contacted an attorney in March of 2001, who then sent a letter on her
behalf to AAA dated March 27, 2001. In the letter, the attorney asserted that “almost
immediately” after Hansen was hired, Carter began sexually harassing her and that
the harassment included touching, offensive remarks, and other unwelcome sexual
conduct. The attorney also asserted that Hansen had complained directly to Carter
and to Sackett, but that the harassment continued. The attorney informed AAA that
the conduct had created a hostile work environment, and he requested a response
from AAA within five days. Hansen then filed a formal complaint of sexual
discrimination with the Equal Employment Opportunity Commission (“EEOC”) on
April 25, 2001. Hansen testified that, after filing her complaint, the locks on the
warehouse and the security codes were changed, preventing her from performing her
duties in a timely manner. Hansen also claimed that her pay was docked. Then, on
May 7, 2001, Hansen was fired by Sackett, allegedly because AAA’s insurance would
no longer cover her due to her previous conviction for driving while intoxicated
(“DWI”). Hansen disputed the reason proffered by AAA for her termination by
noting that, until she filed her complaint, no one at AAA ever indicated that the DWI
would affect her continued employment at AAA. Hansen also noted that AAA had
assured her that the DWI would not present a problem.
           Debbie Clodfelter, who worked primarily in AAA’s Houston office performing
administrative and accounting tasks, testified that Carter sexually harassed her as
well. She stated that the harassment started with inappropriate jokes, and she would
attempt to walk away from Carter, ignore him, and tell him that she did not want to
hear the jokes. Carter then started making offensive comments about her body parts
and her sex life with her husband, Rick Clodfelter, another AAA employee. Debbie
Clodfelter explained that Carter’s remarks were continuous, vulgar, and of a sexual
nature. She initially did not say anything to Carter about his comments because she
hoped that he would stop if she ignored him. She also noted that, on several
occasions, Carter would come up behind her, while she was sitting at her desk, and
massage her shoulders. She would pull away and ask him to stop.
          Debbie Clodfelter also testified that Carter’s behavior got worse, and that she
felt degraded by his behavior. She stated that, one time, Carter came into her office
with a sausage sticking out of his unzipped pants, and asked “what would you want
to do about this?” The incident shocked and upset Debbie Clodfelter, made her feel
humiliated and offended, and she did not want to be around Carter anymore. She
reported the incident to Sackett, her direct supervisor, the next day. In light of
Carter’s harassment, Debbie Clodfelter dreaded going to work. She requested that
Sackett not tell Carter about the complaint because she was afraid of Carter’s
response. After Debbie Clodfelter made the report, Carter continued to make jokes
and rub her shoulders, though she attempted to avoid him. Debbie Clodfelter stated
that after she complained about the harassment, some of her duties were taken away
from her. She also noted that she had never received a copy of AAA’s sexual
harassment policy. 
          In March 2001, Debbie Clodfelter contacted an attorney who sent a letter on
her behalf to AAA dated March 27, 2001. The attorney asserted in the letter that
“almost immediately” after Debbie Clodfelter was hired, Carter began sexually
harassing her and that the harassment included touching, offensive remarks, and other
unwelcome sexual conduct. The attorney also noted that Debbie Clodfelter had
complained directly to Carter and to Sackett, but that the harassment continued. The
attorney informed AAA that the conduct had created a hostile work environment, and
he requested a response from AAA within five days. Debbie Clodfelter then filed a
formal complaint of discrimination with the EEOC on May 2, 2001. Debbie
Clodfelter testified that her job duties were modified in June 2001, and that Sackett
fired her on August 17, 2001, allegedly for “money discrepancies.” She testified that
she did not steal any money from AAA, and that AAA had never accused her of any
wrongdoing prior to her allegations of sexual harassment. 
          Rick Clodfelter, a route salesman for AAA, testified that he was also exposed
to Carter’s offensive behavior. Carter would ask him inappropriate questions about
his sex life with his wife, Debbie Clodfelter, and about the size of Debbie Clodfelter’s
breasts. In one incident, Carter asked Rick Clodfelter about the origin of marks on
his body, and Carter speculated that the marks were caused by Rick Clodfelter’s
sexual activities with his wife. Rick Clodfelter found these comments to be
disgusting, obtrusive, and inappropriate, and he turned and walked away from Carter
after he made these comments. Rick Clodfelter complained about Carter’s behavior
to Walter Hand, AAA’s chief executive officer, on July 30, 2001. Particularly, Rick
Clodfelter complained to Hand about his wife’s sexual harassment charge and stated
that he thought AAA was cutting his wife’s hours because of the charge. Rick
Clodfelter explained that, in light of the continued sexual harassment against his wife,
she was very nervous about going to work, that she felt sick because of her working
environment, and that she did not want to go to work. He further stated that the
sexual harassment, and AAA’s response to the sexual harassment charge, had a
detrimental effect on his marriage. On August 17, 2001, the same day that AAA fired
his wife, AAA fired Rick Clodfelter allegedly because the company was being
realigned. After being fired, Rick Clodfelter saw that another individual, who had
occasionally worked as a part-time employee for AAA when other employees were
on vacation, was now working on his route. Rick Clodfelter noted that this employee
had not been working for AAA at the time he was fired, and that before he was fired,
he was not offered any part-time employment with AAA. He stated that he believed
AAA retaliated against him because of his wife’s sexual harassment charge, and that
he did not believe AAA’s proffered reason for his firing.
          A former AAA employee, Joyce Cormier, testified that she had also been a
victim of Carter’s sexual harassment. Carter would tell her “off-color” sexual jokes
about people having sex with other people and animals, both in person and over the
phone, and she found these jokes offensive. When Carter told these jokes, Cormier
would walk away from Carter or end the conversation quickly. Carter also showed
Cormier sexually explicit cartoons. Additionally, Carter hugged Cormier in an
inappropriate manner by pulling her too close with her upper body and pinning his
chest against her breasts. She found Carter’s conduct to be upsetting and offensive,
and pulled away. Cormier also described an incident in which Carter approached her
in the warehouse when they were alone and said that he had always wanted her in a
sexual way. Cormier felt violated by this comment. Cormier reported Carter’s
behavior to her supervisor, Bob Parker, and to another AAA employee, Neal Hall. 
She told Parker that she did not want to be around Carter anymore. However, even
after her complaints, she still had to come into contact with Carter and the conduct
continued.



          Sackett testified that, prior to Debbie Clodfelter’s complaint about the incident
involving Carter, he never spoke with the appellees about any claims of sexual
harassment. Per Debbie Clodfelter’s request, Sackett did not report her complaint
immediately. Sackett admitted that he was aware of AAA’s sexual harassment policy
and conceded that his failure to immediately report the harassment violated the
company’s sexual harassment policy.


 Sackett also conceded that he only spoke with
Hand after receiving the letters from Hansen’s and Debbie Clodfelter’s lawyer, and
that he was reprimanded by Hand for not complying with the policy. 
          After Debbie Clodfelter complained, Sackett tried to ensure that she was never
alone with Carter, and that if he was unable to return to the office when Carter was
expected to be there, he would tell Debbie Clodfelter to leave before Carter arrived. 
Sackett explained that the locks were not changed in response to the sexual
harassment claims, but instead as a safety precaution after Carter left AAA, and that
revised company policy was for him and only one other employee to have access keys
to the warehouse. Sackett denied that Debbie Clodfelter’s and Hansen’s job duties
were changed after AAA received notice of their sexual harassment complaints. He
stated that Hansen was fired because, in light of her DWI conviction, she did not have
a regular driver’s license and could not drive a car. Moreover, Debbie Clodfelter was
fired because there were discrepancies in the money counts, and Rick Clodfelter was
fired because of a company downsizing.
          Walter Hand, the chief executive officer of AAA, testified that he became
aware of Debbie Coldfelter’s and Hansen’s complaints only after being notified by
Sackett, and that he immediately called Carter and instructed him not to come into
contact with the complaining employees. Hand conceded that Sackett did not comply
with the sexual harassment policy when he failed to immediately report Debbie
Clodfelter’s complaint. He also admitted that Carter had not complied with the
policy. Hand explained that Hansen was fired because she had been cancelled from
the company insurance policy due to her DWI conviction. As to Cormier’s
complaints, Hand testified that the proper chain of command would have been for
Hall to report to him whatever Parker had reported, and he admitted that Hall failed
to comply with the company’s policy in reporting Cormier’s sexual harassment
complaints. 
Standard of Review
          When a party without the burden of proof challenges the legal sufficiency of
the evidence, we consider all of the evidence in the light most favorable to the
prevailing party, indulging every reasonable inference in that party’s favor.
Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285–86 (Tex.
1998); Ned v. E.J. Turner and Co., 11 S.W.3d 407, 408 (Tex. App.—Houston [1st
Dist.] 2000, pet. denied). If there is more than a scintilla of evidence to support the
finding, we must uphold it. Formosa Plastics Corp. USA v. Presidio Eng’rs and
Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998). When the evidence offered to
prove a vital fact is so weak as to do no more than create a mere surmise or suspicion
of its existence, the evidence is no more than a scintilla and, in legal effect, is no
evidence. Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (quoting
Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)). However, if the
evidence supplies some reasonable basis for differing conclusions by reasonable
minds as to the existence of a vital fact, then there is legally sufficient evidence. King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003).
          Our review of the factual sufficiency of the evidence requires us to consider,
weigh, and examine all of the evidence that supports or contradicts the jury’s
determination. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). 
We may set aside the verdict only if the evidence that supports the jury’s finding is
so contrary to the overwhelming weight of the evidence as to be clearly wrong or
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); City of Houston v. Jackson, 
135 S.W.3d 891, 905 (Tex. App.—Houston [1st Dist.] 2004, pet. dism’d w.o.j.).
Sexual Harassment 
          In its first and third points of error, AAA contends that there was legally and
factually insufficient evidence to support the jury’s findings that Hansen and Debbie
Clodfelter were subjected to sexual harassment by AAA. 
          Question 1 of the trial court’s charge asked the jury whether Hansen or Debbie
Clodfelter had been subjected to sexual harassment at AAA. Within question 1, the
trial court instructed the jury that: 
“Sexual harassment” occurred if:
 
           1.       A person was subjected to sexual advances, requests for sexual
favors, and/or other conduct of a sexual nature that was
unwelcome and undesirable or offensive to the person; 
 
          2.       The harassment complained of altered a term, condition, or
privilege of employment; and 
 
          3a.     The conduct was committed by a supervisor with immediate or
successively higher authority over Debra Hansen or Debbie
Clodfelter; or
 
          3b.     AAA Office Coffee Service, Inc. knew or should have known of
the harassment and AAA Office Coffee Service, Inc. failed to take
prompt, remedial action to eliminate the harassment.
The jury answered “yes” to question 1. AAA argues that appellees did not present
any evidence of a hostile work environment and did not present any evidence that
AAA knew, or should have known, of the sexual harassment and failed to take
remedial action. 
          Chapter 21 of the Labor Code provides that it is unlawful for an employer to
discriminate against an employee with respect to compensation or the terms,
conditions, or privileges of employment because of race, color, disability, religion,
sex, national origin, or age. Tex. Lab. Code Ann. § 21.051 (Vernon 1996). Chapter
21 is modeled after Title VII of the Federal Civil Rights Act, and sexual harassment
is a form of prohibited sex discrimination . Green v. Indus. Specialty Contractors,
Inc., 1 S.W.3d 126, 131 (Tex. App.––Houston [14th Dist.] 1999, no pet.); Soto v. El
Paso Natural Gas Co., 942 S.W.2d 671, 677 (Tex. App.––El Paso 1997, pet. denied). 
Because one of the stated purposes of Chapter 21 is to provide for the execution of
the policies of Title VII and its amendments, we may look to federal precedent for
guidance when interpreting it. See Tex. Lab. Code Ann. § 21.001(1) (Vernon
1996); see also NME Hosps., Inc. v. Rennels, 994 S.W.2d 142, 144 (Tex. 1999).
           Courts have generally categorized sexual harassment claims as either “quid pro
quo” or “hostile work environment.” Soto, 942 S.W.2d at 677–78. Here, the parties
agree that this case presents allegations of sexual harassment and discrimination
based on a hostile work environment. In order to prevail on a claim involving a
hostile work environment, a plaintiff must show that: (1) she was an employee who
belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the
harassment was based on sex; (4) the harassment affected a term, condition, or
privilege of employment; and (5) the employer knew or should have known of the
harassment and failed to take adequate remedial action. Gulf States Toyota, Inc. v.
Morgan, 89 S.W.3d 766, 770 (Tex. App.—Houston [1st Dist.] 2002, no pet.);
McMillon v. Tex. Dep’t of Insur., 963 S.W.2d 935, 939 (Tex. App.—Austin 1998, no
pet.). However, if the alleged harassment was perpetrated by a supervisor with
immediate or successively higher authority over the harassed employee, the employee
need only satisfy the first four elements of the test outlined above. Watts v. Kroger
Co., 170 F.3d 505, 509 (5th Cir. 1999).
          In determining if there was a hostile environment, a court should consider the
type of conduct, its frequency, its offensiveness, the hostility of the conduct, whether
it came from a supervisor or co-worker, and the number of persons at whom it is
directed. Dillard Dep’t Stores, Inc. v. Gonzales, 72 S.W.3d 398, 407 (Tex. App.––El
Paso 2002, pet. denied); see also Wal-Mart Stores, Inc. v. Itz, 21 S.W.3d 456, 473–
74 (Tex. App.––Austin 2000, pet. denied). In making this determination, single
incidents should not be viewed alone, but rather the cumulative effect these incidents
have on the overall environment is important. Itz, 21 S.W.3d at 473 (citing Soto, 942
S.W.2d at 678). Additionally, we note that a jury has to determine whether a
reasonable person would find the environment hostile, and if the alleged victim does
not subjectively find the environment hostile, the conduct has not altered the working
conditions, and therefore no cause of action arises. Green, 1 S.W.3d at 131. 
          It is undisputed that Carter was Hansen’s direct supervisor, as well as the
supervisor above Debbie Clodfelter’s direct supervisor. The evidence established that
both women could be hired or fired by Carter, and that they worked with him or
around him frequently. Carter made offensive and sexually explicit jokes to all three
appellees on multiple occasions. Appellees told Carter that his behavior and jokes
were inappropriate and unwelcome. Furthermore, Carter touched Hansen and Debbie
Clodfelter in sexually suggestive and highly inappropriate manners. For example,
Carter patted Hansen on the butt on multiple occasions and also rubbed her breasts
when putting his hand in her shirt pocket. Carter massaged Debbie Clodfelter, even
though she indicated to him that such touching was unwelcome. The jury was also
presented with evidence that, following Hansen’s and Debbie Clodfelter’s complaints
to Carter and other AAA employees, their employment conditions were modified, and
ultimately, they were fired. While Sackett disputed Hansen’s and Debbie Clodfelter’s
allegations of modified employment conditions, his testimony supports Debbie
Clodfelter’s testimony that her hours were reduced following her complaints. There
was also evidence that Hansen and Debbie Clodfelter were not the only ones
subjected to Carter’s conduct. Testimony by Cormier provided evidence that Carter
had engaged in sexually harassing behavior on multiple occasions with another
employee, and that AAA employees did not adequately respond to prior sexual
harassment complaints lodged against Carter. 
          We conclude that the testimony of Hansen and Debbie Clodfelter, as well as
the testimony of Sackett and Hand, provide more than a scintilla of evidence to
support the jury’s finding that Hansen and Debbie Clodfelter were subjected to sexual
harassment. Accordingly, we hold that the evidence was legally sufficient to support
the jury’s answers to question 1. In regard to appellant’s argument concerning factual
sufficiency, AAA does not cite to any evidence contradicting the jury’s findings that
Hansen and Debbie Clodfelter were subjected to sexual harassment. In fact, AAA’s
argument concerning factual sufficiency on its first and third points of error is limited
to a single sentence stating that “the evidence is so weak, with respect to the proof of
elements necessary to establish the Plaintiffs’ cause of action for sexual harassment,
that the result is manifestly unjust.” Even assuming the factual sufficiency point has
been adequately briefed, we conclude, based on the evidence presented, the jury’s
answers to question 1 were not so contrary to the overwhelming weight of the
evidence as to be clearly wrong or unjust. Accordingly, we hold that the evidence
was factually sufficient to support the jury’s answers to question 1. 
          We overrule AAA’s first and third points of error. 
Excused from Responsibility for Sexual Harassment
          In its sixth and seventh points of error, AAA contends that the trial court erred
in denying its motion for new trial and motion for judgment notwithstanding the
verdict because the evidence established as a matter of law, or the overwhelming
weight of the evidence established, that AAA was excused from responsibility for the
sexual harassment against Hansen and Debbie Clodfelter. 
          We review the trial court’s denial of AAA’s motion for judgment
notwithstanding the verdict under a legal sufficiency standard. Navarette v. Temple
Indep. Sch. Dist., 706 S.W.2d 308, 309 (Tex. 1986); Manon v. Solis, 142 S.W.3d 380,
387 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). In reviewing the trial
court’s denial of AAA’s motion for new trial, we conduct a factual sufficiency review
of the jury’s failure to find that AAA was excused from responsibility for the sexual
harassment. See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001); Cain,
709 S.W.2d at 176.          
          Question 2 of the trial court’s charge provided that AAA was legally excused
from responsibility for the sexual harassment if AAA had “exercised reasonable care
to prevent and correct promptly any sexual harassment behavior” and Hansen or
Debbie Clodfelter “unreasonably failed to take advantage of any preventive or
corrective opportunities by her employer or to avoid harm otherwise.” The jury found
that AAA was not legally excused.
          An employer can avoid liability in regard to a sexual harassment claim if it can
prove that it exercised reasonable care to prevent and correct promptly any sexually
harassing behavior and that the plaintiff unreasonably failed to take advantage of any
preventative or corrective opportunities provided by the employer or to otherwise
avoid the harm. Faragher v. City of Boca Raton, 524 U.S. 775, 806–07, 118 S. Ct.
2275, 2293 (1998); see also Gonzales, 72 S.W.3d at 410; Itz, 21 S.W.3d at 472.


 
Whether an employer’s action in response to a sexual harassment claim is sufficient
depends on the specific facts of the case, such as the severity and persistence of the
harassment, and the effectiveness of initial remedial steps. Gonzales, 72 S.W.3d at
410. Even if the employer took some steps to correct the problem, if they were not
reasonable given the circumstances, the employer may still be held liable. Id. at 410;
see also Wal-Mart Stores, Inc. v. Davis, 979 S.W.2d 30, 37–39 (Tex. App.—Austin
1998, pet. denied).
          Here, Hand, AAA’s chief executive officer, conceded that the company’s
sexual harassment policy had not been distributed to all of the employees, including
Debbie Clodfelter. Hand also conceded that the failure of his managers to take
prompt action upon receiving the reports of sexual harassment was a failure of the
company’s sexual harassment policy. Also, Hansen and Debbie Clodfelter both
testified that they told Carter to stop his behavior and that they reported Carter’s
behavior to Sackett, a AAA manager, but that Carter’s behavior continued after these
complaints. Hand also testified that the women complied with the company’s sexual
harassment policy by reporting their complaints to Carter and to Sackett. The
evidence reveals that Hansen and Debbie Clodfelter followed the appropriate
procedures in making harassment complaints, and that AAA failed to follow its own
procedures and respond to the complaints in a timely fashion. 
          We find that there was more than a scintilla of evidence supporting the jury’s
findings that AAA was not excused from responsibility for the sexual harassment
against Hansen and Debbie Clodfelter and we find that AAA did not establish its
defense as a matter of law. Accordingly, we hold that the trial court did not err in
denying AAA’s motion for judgment notwithstanding the verdict. Additionally, we
find that AAA has not demonstrated that the jury’s finding that AAA was not excused
from responsibility for the sexual harassment against Hansen and Debbie Clodfelter
was against the great weight and preponderance of the evidence. Accordingly, we
further hold that the trial court did not err in denying AAA’s motion for new trial.
          We overrule AAA’s sixth and seventh points of error. 
Retaliation
          In its second, fourth, and fifth points of error, AAA contends that there was
legally and factually insufficient evidence to support the jury’s finding that a
discriminatory practice motivated AAA’s decision to fire all three appellees. 
          Question 3 of the trial court’s charge asked the jury:
Was opposition to a discriminatory practice, the making or filing of a
charge of discrimination, or the filing of a complaint a motivating factor
in [AAA’s] decision to terminate any of the [appellees]?
 
The jury answered “yes” to this question in regard to all three appellees. AAA
contends that there is insufficient evidence to demonstrate a causal connection
between appellees’ complaints and their firings. AAA notes that Hansen was fired
approximately two months after she initiated her sexual harassment complaint and
Debbie Clodfelter was fired almost five months after she made her complaint. AAA
also contends that the “motivating factor” standard used in question 3 was incorrect. 
Appellant contends that, based on Pineda v. United Parcel Serv., Inc., 360 F.3d 483
(5th Cir. 2004), a “but for” standard should have been used in the jury charge. 
          The Labor Code prohibits retaliation against a person who (1) opposes a
discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4)
testifies, assists, or participates in any manner in an investigation, proceeding, or
hearing. Tex. Lab. Code Ann. § 21.055 (Vernon 1996). In order to make a claim for
retaliation, appellees must establish a causal connection between the protected
activity and being terminated. See Thomann v. Lakes Reg’l MHMR Ctr., 162 S.W.3d
788, 799–800 (Tex. App.—Dallas 2005, no pet.); Shaikh v. Aerovias De Mexico, 127
S.W.3d 76, 80 (Tex. App.––Houston [1st Dist.] 2003, no pet.). When a
discrimination case has been fully tried on the merits, as in this case, a reviewing
court does not engage in a burden shifting analysis, but instead inquires whether the
evidence is legally sufficient to support the jury’s ultimate finding. Wal-Mart Stores,
Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003) (holding that in unlawful
employment practice claim, it is plaintiff’s burden to prove that discrimination was
motivating factor in employer’s decision to fire plaintiff).
          In regard to whether the jury charge properly stated the law, we note that AAA
did not object to the jury charge at trial, and therefore waived its right to bring an
objection to the charge on appeal. Tex. R. Civ. P. 274. If the trial court has to
resolve a legal issue before the jury can properly perform its fact finding role, a party
must lodge an objection in time for the trial court to make an appropriate ruling
without having to order a new trial. Osterberg v. Peca, 12 S.W.3d 31, 54–55 (Tex.
2000); see also Larson v. Cook Consultants, Inc., 690 S.W.2d 567, 568 (Tex. 1985). 
Because AAA did not object to the “motivating factor” language used in the jury
charge, we do not consider AAA’s argument that a “but for” standard should have
been used in question 3.


 Instead, we review AAA’s sufficiency points under the
motivating factor standard used in the jury charge.
          Initially, we note that the evidence established that appellees were fired within
a close temporal proximity of making their informal and formal complaints, and that
both Rick and Debbie Clodfelter were fired on the same day, allegedly for very
different reasons. Hansen made a formal complaint of sexual harassment on April 25,
2001, and was fired on May 7, 2001. Debbie Clodfelter made her formal complaint
on May 2, 2002, and Rick Clodfelter made a verbal complaint to Hand on July 30,
2001; the Clodfelters were both fired on August 17, 2001. Temporal proximity may
be used as some evidence of a causal connection. Swanson v. Gen. Servs. Admin.,
110 F.3d 1180, 1188 (5th Cir. 1997); Fields v. Teamsters Local Union No. 988, 23
S.W.3d 517, 529 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). 
          We recognize that AAA offered varying reasons as to why each of the
appellees was fired, but appellees presented evidence disputing these reasons. For
example, while the evidence established that Hansen had previously been convicted
of DWI, Hansen noted that she was convicted of DWI seven months before her firing,
and that, prior to her filing the complaint, there was no disciplinary action taken
against her related to her DWI conviction. After her conviction, Hansen notified her
supervisor at AAA, and was assured by her supervisor that the matter would not
affect her employment at AAA and that, if necessary, AAA would find her another
position in the company. Furthermore, prior to making her sexual harassment
complaints, no one at AAA had indicated that the conviction would create any
problem with respect to her continued employment at AAA. Finally, Hansen
testified that after making her complaints, her access to the warehouse area was
restricted, making it more difficult to perform her job duties, and her pay was docked. 
          While AAA asserted that it fired Debbie Clodfelter due to a “money
discrepancy,” AAA never made any formal allegations of theft against her, and these
allegations surfaced, for the first time, only after she made the sexual harassment
complaints. Debbie Clodfelter testified that she did not steal any money, and Sackett
testified that, prior to the alleged money discrepancy, he never had any reason to
question Debbie Clodfelter’s integrity. Additionally, after Debbie Clodfelter made
her sexual harassment complaint, Sackett told her that he wished she had not
proceeded in that fashion. Moreover, Debbie Clodfelter further testified that after she
made her complaint, her hours were reduced and her duties were modified. 
          Although AAA presented evidence that Rick Clodfelter was fired due to a
company downsizing, the record established that Rick Clodfelter complained about
Carter’s inappropriate behavior in July, and was laid off due to the company
downsizing only a few weeks later. Other evidence indicated that, after Rick
Clodfelter was fired due to a company downsizing, no other AAA employee was laid
off until February 2002, and that, after he was fired, another person was employed to
perform at least some of his duties. 
          The jury, as the fact finder, had the opportunity to view the witnesses and was
the sole judge of their credibility and the weight to give to their testimony. Eberle v.
Adams, 73 S.W.3d 322, 327 (Tex. App.—Houston [1st Dist.] 2001, pet. denied);
Transmission Exch. Inc. v. Long, 821 S.W.2d 265, 271 (Tex. App.—Houston [1st
Dist.] 1991, writ denied). Here, appellees presented evidence disputing the reasons
proffered by AAA for their termination, and the jury was free to disbelieve AAA’s
proffered reasons. We conclude that the testimony of Hansen, Debbie Clodfelter, and
Rick Clodfelter, as well as the testimony of the witnesses presented by AAA, provide
more than a scintilla of evidence to support the jury’s findings that appellees’
opposition to a discriminatory practice, the making or filing of a charge of
discrimination, or filing of a complaint was a motivating factor in AAA’s decision to
fire the appellees. Accordingly, we hold that the evidence was legally sufficient to
support the jury’s answers to question 3. In regard to AAA’s argument concerning
factual sufficiency, AAA does not cite to any evidence contradicting the jury’s
findings that appellees’ opposition to a discriminatory practice, making or filing of
a charge of discrimination, or filing of a complaint was a motivating factor in AAA’s
decision to fire the appellees. In fact, AAA’s argument concerning factual sufficiency
on its second, fourth, and fifth points of error is limited to a single sentence stating
that “the evidence presented by the Plaintiffs concerning causation of their
termination of employment was so weak as to constitute factually insufficient
evidence.” Even assuming this issue was adequately briefed, based on the evidence
presented, we conclude that the jury’s answers to question 3 were not so contrary to
the overwhelming weight of the evidence as to be clearly wrong or unjust. 
Accordingly, we hold that the evidence was factually sufficient to support the jury’s
answers to question 3. 
          We overrule AAA’s second, fourth, and fifth points of error.
Exemplary Damages
          In its eighth, ninth, and tenth points of error, AAA contends that there was
insufficient evidence to support the jury’s finding that AAA acted with malice or
reckless indifference to the rights of Hansen, Debbie Clodfelter, and Rick Clodfelter. 
 AAA asserts that there was no conduct “which would calculate to cause substantial
injury,” that neither of the appellees “sought any medical or psychological or
counseling assistance,” and that there was no evidence that AAA’s management
participated in or approved of Carter’s conduct. In reviewing the legal sufficiency of
the evidence supporting the exemplary damages awards, we look to all the evidence
in the light most favorable to the findings to determine whether a reasonable trier of
fact could have formed a firm belief or conviction that its findings were true. See
Southwestern Bell Tel. Co. v. Garza, 164 S.W.3d 607, 609 (Tex. 2004).
          Question 5 of the trial court’s charge asked the jury whether it found, by clear
and convincing evidence, that AAA engaged in the discriminatory practice with
malice or reckless indifference. The jury answered “yes” as to all three appellees, and
awarded $25,000 in exemplary damages to Hansen, $45,000 in exemplary damages
to Debbie Clodfelter, and $15,000 in exemplary damages to Rick Clodfelter.



          Chapter 21 provides that a complainant may recover punitive damages against
a respondent if the complainant demonstrates that the respondent engaged in a
discriminatory practice with malice or with reckless indifference to the statutorily
protected rights of an aggrieved individual. Tex. Lab. Code Ann. § 21.2585(b)
(Vernon Supp. 2004–2005). Here, both Hansen and Debbie Clodfelter testified that
they told Carter that his behavior was inappropriate and unwelcome. They further
testified that they reported Carter’s behavior to Sackett, and that after making these
reports, Carter’s harassment continued. Hansen and Debbie Clodfelter contacted a
lawyer, who sent a letter on their behalf, clearly stating their complaints and notifying
AAA that it would be illegal to take any retaliatory action against Hansen and Debbie
Clodfelter for making such complaints. Hansen and Debbie Clodfelter also
complained that, after making their formal sexual harassment complaints, their job
duties and conditions were modified. Debbie Clodfelter’s complaint that her hours
were cut was supported by the testimony of Sackett, a AAA manager, who testified
that he responded to Clodfelter’s complaints by instructing Clodfelter to leave the
office whenever Carter was on his way there. Sackett also admitted that he violated
AAA’s sexual harassment policy by failing to timely report the harassment
complaints. Hand, AAA’s chief executive officer, admitted that the company’s
sexual harassment policy was not distributed to at least one of the appellees. 
Moreover, Hand admitted that Sackett, Carter, and other AAA employees had failed
to comply with the company’s sexual harassment policy in responding to Hansen’s
and Debbie Clodfelter’s complaints. The record also shows that a former AAA
employee testified that she had been sexually harassed by Carter, that she reported
Carter’s behavior to a AAA manager and another AAA employee, and that Carter’s
inappropriate behavior did not stop. Finally, there was evidence that all three
appellees were fired shortly after initiating their sexual harassment complaints, and
that Debbie and Rick Clodfelter were fired on the same day. 
          We note that AAA’s reliance on Continental Coffee Prods. Co. v. Cazarez, 937
S.W.2d 444 (Tex. 1996) in support of its argument that exemplary damages were not
warranted is misplaced. In Continental Coffee, the plaintiff was fired due to a
violation of an attendance policy. Id. at 451–52. The supreme court, finding that
there was no evidence of ill-will, spite, or specific intent to harm, noted that the
manager who fired the plaintiff based on the violation of the company’s attendance
policy had never met the plaintiff before firing her and had never reviewed her file. 
Id. at 454-55. There was no evidence in Continental Coffee of a long history of
highly inappropriate and harassing behavior similar to the evidence presented to the
jury in this case.  
          We find Wal-Mart Stores, Inc. v. Itz, 21 S.W.3d 456, 473 (Tex. App.––Austin
2000, pet. denied) more comparable. In Itz, the evidence established that a store
manager was aware of a formal sexual harassment complaint and was also aware of
his authority and duty to administer the company’s sexual harassment policy. Itz, 21
S.W.3d at 478. The evidence further showed that the store manager failed to take
sufficient remedial action or conduct an adequate investigation upon being notified
of the complaint. Id. The court held that a reasonable fact finder could have
concluded by “clear and convincing evidence that [the manager] acted with conscious
indifference to [the employee’s] rights, safety, or welfare.” Id. at 478.  
          After considering the testimony of Hansen, Debbie Clodfelter, and Rick
Clodfelter as well as the testimony of the witnesses presented by AAA and reviewing
all the evidence in the light most favorable to the findings, we conclude that appellees
presented evidence which would permit a reasonable trier of fact to form a firm belief
or conviction that Hansen and Debbie Clodfelter were sexually harassed and that
AAA retaliated against the appellees with malice or reckless indifference. 
          AAA’s arguments that the exemplary damages awards are not sustainable
because there was no conduct which would cause substantial injury is without merit.
Appellees were entitled to recover exemplary damages by demonstrating that AAA
engaged in a discriminatory practice with malice, which may be established by
showing a specific intent by AAA to cause substantial injury, or with reckless
indifference. Also, appellees were not required to show that they sought any medical
or psychological counseling assistance. Accordingly, we hold that the evidence was
legally sufficient to support the jury’s answers to question 5.     
          We overrule appellant’s eighth, ninth, and tenth points of error. 
 
 
Conclusion 
          We affirm the judgment of the trial court. 
 
 
                                                                                  Terry Jennings 
                                                                                  Justice


Panel consists of Chief Justice Radack and Justices Jennings and Hanks.