**Patricia SHAIKH, Appellant,**

v.

**AEROVIAS DE MEXICO, Appellee.**

**No. 01–02–00813–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 2, 2003.

Rehearing Overruled Oct. 30, 2003.

Demetrios Anaipakos, Joseph Y. Ahmad, Ahmad & Azvitsanos, P.C., Houston, TX, for Appellant.

Christopher V. Bacon, Mary Michelle Mahony, Thomas H. Wilson, Vinson & Elkins, L.L.P., Houston, TX, for Appellee.

Panel consists of Justices HEDGES, NUCHIA, and HIGLEY.

## OPINION

SAM NUCHIA, Justice.

Appellant, Patricia Shaikh, sued appellee, Aerovias de Mexico (Aeromexico), for damages, alleging unlawful retaliation and sexual harassment after Shaikh was terminated from her employment as a station manager for Aeromexico. The trial court granted summary judgment in favor of Aeromexico on Shaikh's claims and ordered that Aeromexico recover $4,960.65 in costs. Shaikh appeals, challenging the summary judgment and the post-judgment order awarding costs. We affirm the judgment but reverse the order awarding costs.

## BACKGROUND

Shaikh began working for Aeromexico in 1986 and, in November 1995, was promoted to station manager of Aeromexico's fa-

cility in San Diego. In December 1998, Aeromexico conducted an audit of telephone invoices and administrative functions that had previously been handled by an accountant who had resigned. The audit revealed high telephone usage in the San Diego station, as compared with the usage at other stations its size. In particular, there were a large number of calls from San Diego to Puebla, Mexico. Aeromexico does not operate flights from San Diego to Puebla, Mexico. Spot checks of the calls established that they were personal calls. Aeromexico then requested MCI, its long-distance vendor, to provide a detailed call record for 1998. Aeromexico compiled a list of questionable calls and contacted Shaikh to discuss the matter. Shaikh admitted that the calls were personal calls she had made to her sister and others in Mexico. The total cost of the calls was $2,560.63, and Shaikh had not reimbursed Aeromexico for the calls. Shaikh was suspended on January 25, 1999.

Aeromexico had a World Sales and Airports Conference in Mexico City from January 13 through 15, 1999. Shaikh attended the conference on January 13 and 14, but she did not attend a station managers' meeting on January 15 and did not report the day as time off. This problem was also discovered before Shaikh's suspension.

After Shaikh's suspension, Aeromexico discovered that in March and September 1998, Shaikh had issued award letters to Patricia Delgado, an employee of a service provider to Aeromexico. Each of these letters entitled Delgado to a free round-trip ticket, which could be used by her or a family member. Notations on the letter indicate that they were used by Ofelia Kruessi, Delgado's cousin. Both award letters were signed, "OK PShaikh." In fact, Kruessi was not Delgado's cousin, but Shaikh's sister, and Shaikh knew that

Kruessi's use of the free pass was a violation of Aeromexico's policy. In addition, reserved, coach-class tickets, rather than the usual space-available or stand-by tickets, were issued on these letters.

In February 1999, Shaikh was terminated. Shaikh claims that her termination resulted from her refusal of the repeated sexual advances of then Senior Vice President of the United States Division for Aeromexico, Harald Bomberg. The sexual advances that she alleged in her petition were as follows:

(1) At Aeromexico's 10th Anniversary Celebration in Mexico City on October 31, 1998:

   (a) Bomberg made unwanted, repeated invitations to go dancing;

   (b) he stated to her, "You look great with that dress, you look very pretty";

   (c) he requested that Shaikh go back to his hotel room while in Mexico City, saying he allegedly had some papers for her in his hotel room;

   (d) he stated to Shaikh, "If you go to the hotel, call me";

   (e) he stated to Shaikh, "You are very attractive tonight," and "You always look great"; and

   (f) he made it very clear that he wanted to sleep with Shaikh; and

(2) At the World Aeromexico Sales and Airports Conference in Mexico City on January 13–15, 1999:

   (a) Bomberg stated to Shaikh, "You always look great," and "Are we going dancing this time in Mexico?";

   (b) he insisted that Shaikh accompany him at the dinner table and "attended" to her like a date or companion;

   (c) he touched Shaikh's knee under the table;

(d) he grabbed Shaikh's hand and then said, "Now you are going to dance with me"; and

(e) he leaned over Shaikh, holding her by her shoulders and pulling her into his chest.

Shaikh did not make any complaints, either formally or informally, about the alleged advances while she was employed at Aeromexico. Eight days after her termination, Shaikh filed a sexual-harassment complaint with the California Department of Fair Employment and Housing. She received a right-to-sue notice from the U.S. Equal Opportunity Commission and filed suit in California. She also filed a lawsuit in Mexico, asserting some of the same allegations. The California court dismissed Shaikh's lawsuit for *forum non conveniens*, and Shaikh refiled her lawsuit in Texas.[1] Shaikh voluntarily dismissed the lawsuit in Mexico after the trial court in Houston stayed the Texas action pending resolution of the Mexico lawsuit.

The trial court granted Aeromexico's rule 166a(c) and rule 166a(i) motion for summary judgment, signed a final judgment after both parties non-suited all remaining claims, and entered an order awarding costs to Aeromexico. The order awarding costs included the costs of taking depositions, including videotaped depositions, obtaining copies of deposition transcripts and videotapes, making copies of litigation documents, and the airfare for Aeromexico's counsel to attend the deposition of Bomberg in Spain. Shaikh appeals the summary judgment and the order awarding costs.

## DISCUSSION

### *Summary Judgment*

██ In her first point of error, Shaikh contends that the trial court erred in granting summary judgment on her claims of retaliation and sexual harassment because she established a *prima facie* case for both causes of action.

Under rule 166a(i) of the Texas Rules of Civil Procedure, a party may move for summary judgment if there is no evidence of one or more essential elements of a claim or defense on which an opposing party would have the burden of proof at trial. Tex.R. Civ. P. 166a(i). A trial court must grant a no-evidence motion for summary judgment if the nonmovant cannot produce more than a scintilla of evidence raising a genuine issue of material fact. *Flameout Design & Fabrication Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.). On review, we examine the record in the light most favorable to the nonmovant. *Id.*

In a rule 166a(c) motion for summary judgment, the movant has the burden of showing that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. Tex.R. Civ. P. 166a(c). Evidence favorable to the nonmovant is taken as true, and doubts are resolved in the

---

1.  Shaikh asserted causes of action for sexual harassment and retaliation, sex discrimination, violation of public policy (a cause of action under California law), breach of an *express and implied* employment contract, breach of an implied covenant of good faith and fair dealing, retaliation by way of Aeromexico's counterclaims, breach of fiduciary duty, and defamation. In her response to Aeromexico's motion for summary judg-ment, Shaikh stated, in a footnote, "Plaintiff will respond to motion for summary judg-ment only insofar as the claims of sexual harassment and retaliation are concerned. The other claims are not being pursued, or are duplicative of the sexual harassment and retaliation theories." On appeal, Shaikh complains about the summary judgment with respect only to the sexual-harassment and retaliation causes of action.

nonmovant's favor. *Wilson v. Brister*, 982 S.W.2d 42, 44 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). The movant must be granted summary judgment if he disproves, as a matter of law, at least one element of each of the nonmovant's causes of action or establishes each element of an affirmative defense. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex.1996).

Aeromexico's motion for summary judgment asserted, among other things, that there was no evidence to show unwelcome sexual harassment, no evidence to show that any harassment was so severe and pervasive that it affected a term of employment, and no evidence linking Shaikh's termination with the alleged harassment.

Shaikh brings her retaliation and sexual-harassment claims under California Government Code section 12940. CAL. GOV'T CODE §§ 12940–12951 (West 1992 & Supp. 2003). Therefore, we look to California law and federal decisions for guidance. *See Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798, 111 Cal.Rptr.2d 87, 29 P.3d 175, 183 (2001) (holding that, because of similarity of state and federal statutes, in Title VII lawsuits, California courts look to federal decisions for guidance); *see also Fields v. Teamsters Local Union No. 988*, 23 S.W.3d 517, 524 (Tex.App.-Houston [1st Dist.] 2000, pet. denied) (noting that Texas Labor Code section 21.055 is interpreted in accordance with parallel provisions of Title VII).

To establish a *prima facie* case for retaliation, a plaintiff must produce evidence that (1) she engaged in a protected activity, (2) she suffered an adverse employment action after engaging in the protected activity, and (3) her participation in the protected activity and the adverse employment decision were causally connected. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir.

2002). To establish a *prima facie* case for *quid pro quo* sexual harassment, Shaikh had to prove that a tangible employment action resulted from a refusal to submit to Bomberg's advances. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753, 118 S.Ct. 2257, 2265, 141 L.Ed.2d 633 (1998). Thus, a failure to produce some evidence of a causal connection between Bomberg's alleged advances and her termination would defeat both claims.

Taking as true Shaikh's allegations in her petition, and assuming, for the sake of argument, that Shaikh engaged in a protected activity by opposing Bomberg's sexual advances and that the adverse employment decision was her termination, we look to Shaikh's summary judgment evidence to determine whether she produced more than a scintilla of evidence of a causal connection between her termination and Bomberg's advances.

In response to Aeromexico's motion for summary judgment, Shaikh filed the following summary judgment evidence:

(1) Aeromexico's telephone records for the San Diego station, showing Shaik's personal calls to Mexico during 1998;

(2) the affidavit of Shaikh's sister, Ofelia Kruessi, attesting to an encounter with Bomberg in October 1998;

(3) the affidavit of Shaikh, reciting her complaints against Bomberg and responding to Aeromexico's complaints about her use of the free tickets and her absence at a meeting;

(4) the deposition of Steve Cochrane, regional manager for Aeromexico and one of the managers who recommended Shaikh's termination;

(5) the deposition of Bomberg;

(6) the memorandum informing Aeromexico personnel of Shaikh's termi-

nation and of the appointment of an acting manager;

(7) the memorandum transmitting telephone records to Cochrane;

(8) the Aeromexico policy on use of phone, mail, and telex systems;

(9) the deposition of Patricia Delgado, the service-provider employee who gave the award-letter tickets to Shaikh's sister; and

(10) copies of the two tickets used by Shaikh's sister.

Shaikh does not deny that she charged $2,560.63 in personal calls from San Diego to Mexico to the company during 1998 and did not reimburse the company. She admits that she approved issuance of the round-trip flight passes in her sister's name after having awarded the passes to Delgado, but argues that it was Delgado who offered the use of the passes and made the representation that Kruessi was Delgado's cousin. However, Shaikh also admits that she knew that the use of the passes was improper. Shaikh insists that the meeting she did not attend was not a mandatory meeting, but admits that she did not report the day as personal time off.

Shaikh's termination notice stated that the reason for termination was loss of confidence in her. Cochrane testified at his deposition that the reason for Shaikh's termination was "loss of confidence on the part of Aeromexico in her ability to manage because she violated" company rules regarding use of company telephones, taking time off and reporting it as time worked, and abusing pass privileges.

Shaikh does not direct us to any evidence to support her contention that she was fired in retaliation for her rejection of Bomberg's advances. In her deposition, she admitted that she had never complained to anyone at Aeromexico about Bomberg's conduct, and the summary judgment evidence does not show that the managers who ordered and conducted the audit of the San Diego station had any knowledge of alleged improper conduct by Bomberg or of complaints by Shaikh. At most, the evidence shows that Bomberg's involvement in Shaikh's termination was limited to receiving the recommendation of Cochrane, Steven Gomez (general manager of station operations), Rachel Zapien (human resources manager), and Jose Quant (controller) that she be terminated, discussing the matter in a meeting with Cochrane, Zapien, and Quant, and approving the termination.

We hold that Shaikh did not meet her burden of producing more than a scintilla of evidence to establish a causal connection between her termination and her rejection of Bomberg's alleged advances. Accordingly, we overrule Shaikh's first point of error.

■ In her second point of error, Shaikh challenges the order awarding costs. Shaikh claims that the costs awarded for (1) additional copies of pleadings, not required by law, (2) videotaped depositions, and (3) airfare for Aeromexico's counsel to attend the deposition of Bomberg in Spain are not authorized by statute or common law. The costs awarded by the trial court were based on a document titled, "Defendant's Bill of Costs," which was prepared by Aeromexico's counsel and attached to Aeromexico's motion for entry of order of costs. The trial court awarded costs of $4,960.65, as requested.[2]

Under Section 31.007(b) of the Texas Civil Practice and Remedies Code, a court

2. The bill of costs in the clerk's record shows a total amount of $752.00, but does not reflect total amounts paid by each party.

may include in any order or judgment all costs, including,

(1) fees of the clerk and service fees due the county;

(2) fees of the court reporter for the original of stenographic transcripts necessarily obtained for use in the suit;

(3) masters, interpreters, and guardians ad litem appointed pursuant to the rules and state statutes; and

(4) such other costs and fees as may be permitted by the rules and state statutes.

TEX. CIV. PRAC. & REM.CODE ANN. § 31.007(b) (Vernon 1997).

■■ Rule 140 of the Rules of Civil Procedure restricts the cost of copies to be assessed against a party to those copies required by law or the rules. *See* TEX.R. CIV. P. 140. Rule 141, however, provides that "the court may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or by these rules." TEX.R. CIV. P. 141. "Costs" usually refers to fees and charges required by law to be paid to the courts or some of their officers, and the amount is fixed by statute or the court's rules. *Ex parte Williams*, 866 S.W.2d 751, 753 (Tex. App.-Houston [1st Dist.] 1993) (orig.proceeding). "Costs, within the meaning of Rules 125 through 149 are those items in the clerk's bill of costs." *Pitts v. Dallas County Bail Bond Bd.*, 23 S.W.3d 407, 417 (Tex.App.-Amarillo 2000, pet. denied); *see also* TEX.R. CIV. P. 125–149.

■ The allocation of costs is a matter for the trial court's discretion and cannot be overturned on appeal except for an abuse of discretion. *Univ. of Houston Clear Lake v. Marsh*, 981 S.W.2d 912, 914 (Tex.App.-Houston [1st Dist.] 1998, no pet.). However, the issue in this case is not the allocation of costs, but the assess-

ment of costs. *See Whitley v. King*, 581 S.W.2d 541, 544–45 (Tex.Civ.App.-Fort Worth 1979, no writ) (noting that power to tax costs does not include power to tax items normally not allowed). Generally, in Texas, expenses incurred in prosecuting or defending a lawsuit are not recoverable as costs, unless permitted by a statute or equitable principle. *Phillips v. Wertz*, 579 S.W.2d 279, 280 (Tex.Civ.App.-Dallas 1979, writ ref'd n.r.e.).

■ The costs of taking and filing a deposition are recoverable. *Shenandoah Assocs. v. J & K Props.*, 741 S.W.2d 470, 487 (Tex.App.-Dallas 1987, writ denied). However, the rule providing for the taxing the costs for depositions does not include taxing the cost of copies of depositions. *See* TEX.R. CIV. P. 203.2 (providing that deposition officer must file sworn certificate stating, among other things, "the amount of the deposition officer's charges for preparing the original deposition transcript, which the clerk of the court must tax as costs"). In addition, travel costs are not included. *See Wallace v. Briggs*, 162 Tex. 485, 348 S.W.2d 523, 527 (1961).

The copies of deposition transcripts, videotapes, and litigation documents listed in Aeromexico's Bill of Costs are not required by law and are part of the expenses of litigation. Therefore, they are not properly taxable as costs. If any of the deposition costs listed in Aeromexico's Bill of Costs were the court reporter's charges for preparing the *original* deposition transcript, a certificate as required by rule 203.2(f) should have been filed with the Harris County District Clerk.

We sustain Shaikh's second point of error.

## CONCLUSION

We affirm the judgment of the trial court. We reverse the post-judgment or-

der awarding costs and remand the cause for the award of costs consistent with this opinion.