**MATBON, INC. and William Edgar Hutton, Appellants,**

v.

**Dennis and Debra GRIES, Appellees.**

**No. 11–06–00258–CV.**

Court of Appeals of Texas, Eastland.

Jan. 15, 2009.

Raul A. Gonzalez, Law Office of Raul A. Gonzalez, Austin, D. Patrick Long, Robert A. Hawkins, Shana L. Burleson, Patton Boggs, L.L.P., Dallas, Kenneth N. Tarlton, Mineral Wells, for appellants.

James V. Jay, Thomas M. Michel, Griffith, Jay & Michel, LLP, Brandon L. Boehme, Boehme & Moore, LLP, Randall D. Moore, Fort Worth, for appellees.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

This appeal arises from an automobile accident. Dennis and Debra Gries filed suit against Matbon, Inc. and William Edgar Hutton for injuries they received in a collision that occurred on May 11, 2005, on U.S. Highway 281 in Palo Pinto County. Based upon the jury's answers, the trial court entered a judgment awarding appellees damages in excess of three million dollars. Appellants challenge the trial court's judgment in thirteen issues. We affirm in part, modify and affirm in part, reverse and remand in part, and reverse and render in part.

### Background Facts

Hutton was employed by Matbon as a truck driver. He and Tarence Ray Willhite, another Matbon truck driver, were driving their trucks north from Dublin to Chico on U.S. Highway 281. Willhite was following Hutton in his truck. Appellees were following Willhite's truck in their vehicle. Immediately prior to the time that the accident occurred, Willhite observed Hutton's truck cross the centerline of the highway into the oncoming southbound lane of U.S. Highway 281. Hutton testified that he was reaching to his right to retrieve some crackers inside the cab of his truck at the time. He was unaware that he had crossed the centerline until Willhite advised him of it by radio.

Beverlea Christian was traveling south on U.S. Highway 281 followed by Robert Samuel Howard. Howard testified that he observed Hutton's truck cross three or four feet over the centerline into the southbound lane for three or four seconds. Christian reacted by initially moving to the right onto the shoulder of the southbound lane. She then "overcorrected" her vehicle by moving back to the left across the centerline of the highway into the north-bound lane. Christian's vehicle collided head-on with appellees' vehicle. Christian and her occupant died at the scene. Appellees suffered severe injuries as a result of the collision. Specifically, Dennis Gries suffered severe fractures of both lower extremities and an open fracture of his left forearm. At the time of trial, Dennis Gries faced the possibility of his leg being amputated. Debra Gries suffered fractures of her heel, great toe, thumb, and cervical vertebrae.

The independent executor and statutory wrongful death beneficiaries of Christian and her occupant initiated the underlying action against appellants on July 14, 2005. Appellees intervened in the lawsuit as claimants against appellants on August 29, 2005. The claims asserted on behalf of Christian and her occupant were subsequently settled prior to trial.

Appellees' claims proceeded to a jury trial that began on May 15, 2006. Appellants filed a "Joint Stipulation and Confession of Liability for Negligence" at the outset of the trial that provided as follows:

> The negligence of William Hutton and Matbon, Inc., the Defendants in this case, was a proximate cause of the May 11, 2005 vehicular accident and resulting injuries to Plaintiffs Dennis Gries and Debra Gries.
>
> . . . .
>
> Matbon, Inc. additionally confesses and stipulates that at the time of the subject accident, William Hutton was its employee acting within the scope and course of his employment.

The jury apportioned 70% of the responsibility for the accident to Matbon and 30% to Hutton. The jury determined that Dennis Gries sustained damages of $2,717,477.34 and that Debra Gries suffered damages of $622,258.83. The jury additionally determined that Hutton was

grossly negligent and awarded $500,000 in exemplary damages.

### Submission of Christian's Negligence

In their first two issues, appellants contend that the trial court made erroneous pretrial rulings that precluded the submission of Christian's alleged negligence to the jury. They assert in Issue No. 1A that the trial court erred in denying Matbon's motion to designate Christian as a responsible third party. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.004 (Vernon 2008). In Issue No. 1B, appellants contend that the trial court erred in granting appellees' no-evidence motion for summary judgment regarding Christian's negligence. The trial court granted appellees' no-evidence motion for summary judgment prior to addressing Matbon's motion to designate.[1] Accordingly, we begin our analysis by addressing the trial court's ruling on the no-evidence motion for summary judgment.

■ Appellees sought summary judgment on the issue of Christian's negligence solely on no-evidence grounds under TEX.R. CIV. P. 166a(i). A trial court must grant a no-evidence motion for summary judgment unless the nonmovant produces more than a scintilla of probative evidence to raise a genuine issue of material fact. Rule 166a(i); *Wal–Mart Stores, Inc. v. Rodriguez,* 92 S.W.3d 502, 506 (Tex.2002). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson,* 249 S.W.3d 425, 426 (Tex.2008) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005)).

Prior to addressing the merits of the no-evidence summary judgment, we note that this issue only applies to Matbon. Matbon and Hutton initially filed a joint answer in response to appellees' petition in intervention. Their original answer only contained a general denial and jury demand. Matbon subsequently filed amended answers that Hutton did not join. In its first amended original answer filed on March 7, 2006, Matbon alleged that "[p]laintiffs' injuries, if any, were caused by [p]laintiffs' own negligence, which bars, in whole or in part, any recovery from [d]efendants."[2] Appellees filed their no-evidence motion for summary judgment on April 10, 2006, in response to Matbon's allegation of contributory negligence. Only Matbon filed a response to the no-evidence motion for summary judgment. The trial court granted the motion for no-evidence summary judgment on April 28, 2006. Hutton never filed a pleading alleging that Christian was negligent or a response to the no-evidence motion for summary judgment. Accordingly, Hutton cannot complain on appeal that the trial court erred in entering a no-evidence summary judgment that precluded the submission of Christian's negligence to the jury. *See* TEX.R.APP. P. 33.1.

■ Appellees attached evidence to their motion for no-evidence summary judgment in an attempt to preemptively negate the claim that Christian was negligent. We do not consider this evidence,

---

**1.** The parties and the trial court acknowledged that the trial court's ruling granting the no-evidence summary judgment was dispositive of the request to designate Christian as a responsible third party. Accordingly, the trial court denied the motion to designate without conducting a hearing on the motion.

**2.** At the time that Matbon filed its first amended original answer, the plaintiffs consisted of appellees and the representatives of Christian and her occupant. In Matbon's First Amended Original Answer, the term "Defendants" refers to Matbon and Site Concrete, Inc. Appellees dismissed Site Concrete, Inc. as a defendant prior to trial.

however, because we may not consider any evidence presented by a movant solely seeking a no-evidence summary judgment under Rule 166a(i) unless it creates a fact question. *Binur v. Jacobo,* 135 S.W.3d 646, 651 (Tex.2004). Under Rule 166a(i), we direct our attention to the summary judgment evidence that accompanied Matbon's response. Matbon attached three items of summary judgment evidence to its response: (1) an unauthenticated expert report from an accident reconstructionist; (2) excerpts from the deposition of DPS Trooper Hank Beverage, the trooper who investigated the accident; and (3) an unauthenticated witness statement from Howard, the driver who was following Christian in the southbound lane. The trial court disallowed the expert report and witness statement by sustaining appellees' objections to them. Matbon has not challenged the trial court's evidentiary rulings. Accordingly, we limit our review to Trooper Beverage's deposition excerpts.

The deposition excerpts contain statements from Trooper Beverage wherein he agreed that "[Christian] overcorrected and went across the roadway in the northbound lane of traffic." Trooper Beverage additionally agreed with a statement that the paved shoulder of the southbound lane where the accident occurred was wide enough for Christian to have remained on the paved portion of the roadway. We conclude that these statements, standing alone, are insufficient to raise a fact question regarding Christian's contributory negligence.

■ Matbon is correct in its assertion that Trooper Beverage's deposition excerpts support the contention that Christian overcorrected her vehicle. However, there is no evidence that Christian failed to do what an ordinary driver would have done in the same or similar situation. In this regard, the allegations in this suit suggest that the encroachment of Hutton's truck into the southbound lane presented Christian with a sudden emergency. Under the sudden emergency doctrine, if a person is confronted by an emergency arising suddenly and unexpectedly, which was not proximately caused by any negligence on his part and which, to a reasonable person, requires immediate action without time for deliberation, his conduct in such an emergency is not negligence or failure to use ordinary care if, after such emergency arises, he acts as a person of ordinary prudence would have acted under the same or similar circumstances. *See Thomas v. Oldham,* 895 S.W.2d 352, 360 (Tex.1995).[3] There is no summary judgment evidence that persons of ordinary prudence would not have overcorrected their vehicles under the same or similar circumstances in trying to avoid a truck encroaching into his or her lane of travel. Appellants' Issue No. 1B is overruled.

Our disposition of Issue No. 1B regarding the no-evidence summary judgment is dispositive of appellants' Issue No. 1A regarding the trial court's denial of the motion to designate Christian as a responsible third party with regard to Matbon. Furthermore, Hutton did not join in the motion to designate Christian as a responsible third party. Hutton cannot complain on appeal that the trial court erred in denying the motion to designate Christian as a

---

3. Matbon attempted to negate the existence of a sudden emergency in its response to the no-evidence motion for summary judgment by arguing that Christian did not timely react to the encroachment of Hutton's truck into the southbound lane. Matbon supported this allegation with the expert report and Howard's witness statement. As noted previously, the trial court struck these items of summary judgment evidence. Accordingly, there is no summary judgment evidence supporting the allegation that Christian failed to react timely.

responsible third party. Appellants' Issue No. 1A is overruled.

## Past Medical Expenses

■ Appellants' Issue No. 2A involves the application of TEX. CIV. PRAC. & REM. CODE ANN. § 41.0105 (Vernon 2008). This statute provides: "In addition to any other limitation under law, recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant." The legislature enacted this statute in 2003 as a part of tort reform legislation. A debate has emerged regarding the effect of this statute. *See* R. Talmadge Hammock, *The Changing World of Medical Malpractice /Personal Injury Law,* 70 TEX. B.J. 51 (2007). This debate focuses on whether a plaintiff may still recover the gross amount of his medical bills in a personal injury action even though the medical provider may have reduced a portion of the medical bills as a result of its contractual arrangements with the plaintiff's insurer. *See Mills v. Fletcher,* 229 S.W.3d 765 (Tex. App.-San Antonio 2007, no pet.). As noted recently by the supreme court, "Few patients today ever pay a hospital's full charges, due to the prevalence of Medicare, Medicaid, HMOs, and private insurers who pay discounted rates." *Daughters of Charity Health Servs. of Waco v. Linnstaedter,* 226 S.W.3d 409, 410 (Tex.2007) (citing George A. Nation III, *Obscene Contracts: The Doctrine of Unconscionability and Hospital Billing of the Uninsured,* 94 KY. L.J. 101, 104 (2005–06), for the proposition that hospital charges labeled as " 'regular,' 'full,' or 'list,' are misleading, because in fact they are actually paid by less than five percent of patients nationally").

Appellants contend that Section 41.0105 limits appellees' recovery of past medical expenses by preventing them from recovering amounts allegedly written off by their medical providers. They assert in Issue No. 2A that the trial court erred in permitting appellees to recover the gross amount of their past medical expenses. Appellants initially presented this contention in a motion in limine. After hearing arguments from both sides, the trial court advised the parties that it would postpone making a ruling on appellants' contention under the statute until after trial. Pursuant to this arrangement, the trial court permitted appellees to present evidence to the jury of the gross amount of their medical bills. In this regard, appellants stipulated to the gross amount of appellees' medical bills and the causal link between appellees' past medical expenses and appellants' negligence. In light of this stipulation, the trial court removed the issue of appellees' past medical expenses from the jury's consideration.

The trial court considered appellants' contention under Section 41.0105 after the trial. Appellants offered two exhibits for the trial court's consideration that purportedly set out the amounts written off appellees' medical bills by the medical providers. The trial court ultimately rejected appellants' contentions under Section 41.0105 by ruling that appellees were entitled to recover the gross amount of their medical bills. We conclude that the trial court erred in making its ruling.

We begin our analysis by noting that the trial court did not have the benefit of any cases interpreting Section 41.0105 as of the date of trial. Only a few cases have interpreted the statute since then. The primary case is *Mills,* 229 S.W.3d 765. In a plurality opinion, Justice Angelini of the San Antonio Court of Appeals held that Section 41.0105 precludes the recovery of written-off medical expenses. 229 S.W.3d at 769. For the reasons stated therein, we agree with Justice Angelini's interpretation of the statute. By its express terms,

Section 41.0105 limits the recovery of medical or health care expenses incurred "to the amount *actually* paid or incurred by or on behalf of the claimant" (emphasis added). The word "actually" is the operative term of the statute. It is an adverb that modifies both "paid" and "incurred." In application, the statute limits the recovery of medical or health care expenses to the amount actually paid or actually incurred by or on behalf of the claimant. In reaching our holding, we are mindful of the contention of the plaintiffs' bar that charges for medical services are normally incurred at the time service is performed. However, Section 41.0105 does not provide for the recovery of the amounts initially incurred by the claimant. To the contrary, it limits the recovery to the amounts actually incurred by the claimant or his insurer. Amounts that a health care provider subsequently writes off its bill do not constitute amounts actually incurred by either the claimant or the claimant's insurer because neither the claimant nor the insurer will ultimately be liable for paying these amounts. Moreover, under the interpretation of Section 41.0105 advanced by appellees and the Texas Trial Lawyers Association,[4] the statute does not alter the previous practice of permitting a claimant to recover the gross amount billed by medical providers. We believe that it is unlikely that the legislature simply intended to codify the previous practice with the enactment of Section 41.0105 given its inclusion in the sweeping tort reform legislation of House Bill 4 and its express intent of limiting the recovery of health care expenses.

The supreme court made a passing reference to Section 41.0105 in *Linnstaedter*, 226 S.W.3d at 412 n. 22. In discussing a workers' compensation claimant's claim against a tortfeasor, the court stated in *Linnstaedter* that the claimant should only be able to seek the reduced amount of medical bills paid by the compensation carrier from the tortfeasor rather than the full amount of medical charges billed by the provider. The court based this statement on the rationale that, if the provider had no claim for the unpaid amount against the claimant, the claimant would obtain a windfall if he were able to recover the gross amount of medical charges from the tortfeasor. The court cited Section 41.0105 as a codification of this rationale. Accordingly, our holding is consistent with the supreme court's apparent view of the statute.

■ As noted in Justice Angelini's plurality opinion, this interpretation of Section 41.0105 violates the collateral source rule to some extent.[5] However, the statute does not eviscerate the collateral source rule because it continues to permit the claimant to recover amounts actually paid on his behalf by an insurer. Furthermore, the statute does not require the admission of evidence of the nature and amount of collateral source payments made on behalf of the claimant so as to prejudice the amount of the claimant's recovery in the eyes of the factfinder. *See Taylor v. Am. Fabritech, Inc.*, 132 S.W.3d 613, 626 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (The collateral source rule precludes a tortfeasor from mentioning payments to the injured party from

---

4. We have received an amicus curiae brief from the Texas Trial Lawyers Association regarding the interpretation of Section 41.0105.

5. The collateral source rule is a rule of evidence that prevents testimony that the injured party has received payments from insurance or other sources. The rationale for the rule is that the wrongdoer should not benefit from the plaintiff having procured his or her own insurance. *See Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 934 (Tex.1980).

sources other than the tortfeasor.). Lastly, as recognized in *Goryews v. Murphy Exploration & Prod. Co.,* No. V–06–01, 2007 WL 2274400, at *5 (S.D.Tex. Aug.8, 2007), our interpretation of the statute comports with the policy that tort damages are designed to make the victim whole. *See Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 16 (Tex.1994).

■ Having determined that the trial court erred in interpreting and applying the statute, we must now determine the appropriate appellate relief. It should be noted that the trial court anticipated this dilemma when it issued its ultimate ruling on the application of Section 41.0105. The trial court encouraged the parties to reach an agreement on the amounts written off appellees' medical bills in the event we disagreed with its interpretation of the statute. If the parties had followed the trial court's recommendation, we could have easily modified the awards of past medical expenses to the stipulated amounts. In the absence of a stipulation between the parties, it is necessary for the awards of appellees' past medical expenses to be reversed and remanded consistent with our interpretation of Section 41.0105.

In remanding the awards of appellees' past medical expenses, we note that the task of determining the amounts of appellees' medical charges that were actually paid or incurred would seemingly appear to be a matter of simple mathematical calculation by reviewing the relevant billing records. A cursory review of the medical billing records offered into evidence in this case negates this assumption. The medical billing records consist of what appear to be computer-generated printouts of appellees' medical charges. The billing record of each medical provider utilizes its own unique system of accounting codes that are not necessarily self-explanatory. Furthermore, the billing records from the hospital that initially treated appellees suggest that it wrote off approximately 96% of Dennis Gries's medical charges and 74% of Debra Gries's medical charges. Common sense dictates that the hospital did not discount appellees' medical charges by these incomprehensible amounts. In light of these inherent problems with the billing records, the court directs the parties' attention to the manner in which the appellant in *Gore v. Faye,* 253 S.W.3d 785 (Tex.App.-Amarillo 2008, no pet.), detailed the write-off amounts with oral testimony from the records custodians.

Appellants' Issue No. 2A is sustained. The awards of appellees' past medical expenses are reversed and remanded consistent with our interpretation of Section 41.0105.

*Future Medical Expenses*

Appellants' Issue No. 2B concerns the award of future medical expenses to appellees. The jury awarded $500,000 to Dennis Gries and $65,000 to Debra Gries in future medical expenses. Appellants contend that the trial court erred in permitting appellees to present evidence of the cost of a custom-built home, health club membership dues, reimbursement for a house hunting trip, meals, mileage, hotels, car rentals, parking, airfare, moving expenses, and fees for a financial advisor in support of their claim for future medical expenses.

We review a trial court's evidentiary rulings for abuse of discretion. *Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex.1998). A trial court abuses its discretion when it acts without regard for any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). A person seeking reversal of a judgment based on evidentiary error must show both that the trial court committed error and that

the judgment turns on the particular evidence admitted or excluded. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex.1995). For a judgment to be properly reversed, a party is not required to prove that "but for the error a different judgment would necessarily have been rendered, but only that the error probably resulted in an improper judgment." *Id.* at 753; *see* Tex.R.App. P. 44.1(a). "We determine whether the case turns on the evidence excluded by reviewing the entire record." *Alvarado*, 897 S.W.2d at 754.

Appellees called Dr. George William Wharton, M.D., as an expert in support of their damage claims. Dr. Wharton is an orthopedic surgeon specializing in spinal surgery and rehabilitation medicine in Dallas. Appellees retained Dr. Wharton to prepare "lifecare plans" with regard to their future medical requirements.[6] Dr. Wharton prepared lengthy reports for both appellees, and he testified extensively from these reports regarding their future medical needs. Among other things, Dr. Wharton's lifecare plans for appellees included projected costs for them to relocate from their home in Colorado Springs, Colorado, to a new, specially built home in San Antonio. The lifecare plans also included estimated costs for a financial planner to help appellees manage the large judgment they anticipated receiving. Appellants objected to Dr. Wharton's testimony regarding these items on the basis that they were not recoverable as future medical expenses. They additionally asserted that Dr. Wharton was not qualified to offer testimony about these items.

■ The first question we must resolve is whether the trial court abused its discretion in allowing Dr. Wharton's testimony on the challenged items. Appellants argue

that future medical expenses are limited to actual medical expenses. Consequently, appellants contend that the cost of a new home and the fees for a financial advisor are not recoverable as future medical expenses.

Dr. Wharton prefaced his testimony regarding the lifecare plans by stating that the items contained in them were necessary as a direct result of the injuries and disabilities that appellees suffered from the accident. With respect to the new home, Dr. Wharton testified that appellees would need to relocate to San Antonio as a result of their physical limitations because of its more temperate climate and availability of family members to help them with their needs. He also stated that appellees needed a 4,000–square foot, wheelchair-accessible home specially constructed for them. Dr. Wharton further testified that appellees also needed a bonded financial advisor to help them manage their potential recovery.

Despite Dr. Wharton's testimony that appellees needed a new home and a financial advisor, we find that the trial court abused its discretion in permitting evidence of the projected costs of these items as recoverable future medical expenses. Appellees have not cited any authority authorizing a personal injury claimant to recover the cost of a financial advisor to manage his or her potential recovery. In the absence of such authority, we conclude that a recovery for the cost of a financial advisor is not permitted, particularly as an element of future medical expenses.

■ Whether the cost of a new home for appellees is a compensable element of future medical expenses is a closer question. It is conceivable that a plaintiff's

---

**6.** Dr. Wharton described a lifecare plan as "a projection of the expenses that are likely to be incurred on the part of the patient who has suffered some sort of an impairment or injury."

special housing needs would constitute a recoverable future medical expense. For example, if Dr. Wharton had testified that appellees needed to live in a nursing home as a result of their physical limitations, there would be little question that the projected costs of nursing home care would be compensable as a future medical expense. Or, if Dr. Wharton had identified modifications that needed to be made to appellees' existing home to make it handicap-accessible, a recovery for the costs of these modifications would be plausible. The cost of relocating to a new city and constructing a new home, however, is a different issue. While there is evidence that the relocation and new home are necessary as a result of the injuries attributable to the accident, a recovery of these costs as future medical expenses is problematic. Permitting a recovery for the cost of a new home is troublesome because it necessarily involves issues dealing with the plaintiff's personal tastes and preferences in housing. The issue is particularly problematic in this case because Dr. Wharton's calculations do not include an offset for the value of appellees' current home. As noted previously, the purpose of tort damages is to make the claimant whole. Under the circumstances of this case, a recovery for the cost of relocating and constructing a new home exceeds this goal.

■■■■ Having determined that the trial court erred in admitting evidence regarding some of the items that appellees sought to recover as future medical damages, we must determine if the error probably resulted in an improper judgment. In this regard, appellees contend that appellants have waived this contention because they did not ask the trial court to include in the court's charge separate damage questions for each of the challenged

items of future medical damages that appellees sought. Appellees cite *Crown Life Insurance Co. v. Casteel*, 22 S.W.3d 378 (Tex.2000), and *Harris County v. Smith*, 96 S.W.3d 230, 235 (Tex.2002), in support of this proposition. *Casteel* and *Harris County* are inapplicable because the court's charge did not contain a broad-form damage question that commingled multiple damage elements. A claim for future medical damages is a separate element of damages available to a personal injury claimant. We disagree with appellees' contention that the future medical damages question should be broken down into separate sub-parts whenever some of the items sought to be recovered as future medical damages are challenged.

■■■■ An award of future medical expenses lies largely within the jury's discretion. *Columbia Med. Ctr. of Las Colinas v. Bush*, 122 S.W.3d 835, 862–63 (Tex.App.-Fort Worth 2003, pet. denied). No precise evidence is required to support an award of future medical expenses. *Pipgras v. Hart*, 832 S.W.2d 360, 366 (Tex.App.-Fort Worth 1992, writ denied). The jury may make its award for future medical care based upon the nature of the plaintiff's injuries, medical care rendered before trial, past medical expenses, and the plaintiff's condition at the time of trial. *See Tagle v. Galvan*, 155 S.W.3d 510, 519 (Tex. App.-San Antonio 2004, no pet.); *Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 828 (Tex.App.-Houston [1st Dist.] 1999, pet. denied).

■■■■ As noted previously, the jury awarded $65,000 to Debra Gries and $500,000 to Dennis Gries for future medical expenses. Dr. Wharton determined the gross value of Debra Gries's lifecare plan to be $434,719.41.[7] He determined

---

7. Appellees' economist, Shannon Shipp, testified that the present value of the gross value

set out in Dr. Wharton's lifecare plans constituted $297,897 for Debra Gries.

the annual cost of her plan to be approximately $13,584. Of this amount, only $3,000 (the cost of a financial advisor) was attributed to an expense we have determined was not recoverable as a future medical expense.[8] We conclude that the admission of evidence of the cost of a financial advisor for Debra Gries was harmless because the evidence of her other future medical expenses exceeded the amount awarded by the jury.[9]

 We reach a different result with Dennis Gries's recovery of future medical expenses. Dr. Wharton projected the gross value of Dennis Gries's lifecare plan at $1,127,160.[10] He determined this number by calculating that Dennis Gries would need $44,728.59 a year for the next 25.2 years. Approximately $24,000 of the annual amount of $44,728.59 was attributable to the cost of relocating and building a new home. The yearly cost of the financial advisor accounted for $9,000 of the annual amount for Dennis Gries's lifecare plan. Accordingly, a substantial portion of the annual cost of Dennis Gries's lifecare plan were attributable to items that we have determined were not recoverable as future medical expenses. The cumulative gross value of the remaining items in Dr. Wharton's lifecare plan for Dennis Gries equaled approximately $295,560. Given the disparity between the amount awarded by the jury to Dennis Gries for future medical care ($500,000) and the gross value of recoverable items in Dennis Gries's lifecare plan ($295,560), we conclude that the trial court's admission of evidence regarding the costs of relocating to San Antonio, building a new home, and hiring a financial advisor probably caused the rendition of an improper judgment with respect to Dennis Gries's recovery of future medical expenses.

 The next question we must resolve is the disposition of the jury's award of future medical expenses to Dennis Gries. As set forth in the preceding paragraph, we have determined that appellees presented competent evidence of future medical expenses in the gross amount of $295,560. Additionally, Dr. Wharton's testimony establishes that appellees' home will need modifications to accommodate their disabilities arising from this accident. A court of appeals may exercise its power to suggest a remittitur when it determines there is insufficient evidence to support a damage award but finds that there is sufficient evidence to support a lesser award. *David McDavid Pontiac, Inc. v. Nix*, 681 S.W.2d 831, 838–39 (Tex.App.-Dallas 1984, writ ref'd n.r.e.). We conclude that there is evidence to support the lesser award of $325,000.

Appellants' Issue No. 2B is overruled in part and sustained in part. It is overruled with respect to Debra Gries's claim for future medical expenses. It is sustained with respect to Dennis Gries's claim for future medical expenses. Pursuant to TEX. R.APP. P. 46.3, if within fifteen days of the date of this opinion Dennis Gries files a remittitur of his future medical expenses from $500,000 to $325,000, then the judgment will be modified to reflect the remittitur and, as modified, affirmed. If the

8. Dr. Wharton included all of the costs of relocating and constructing a new home in Dennis Gries's lifecare plan.

9. Appellants acknowledge in their brief that appellees presented competent evidence of future medical expenses for Debra Gries of at least $78,873.

10. Shipp testified that the present value of the gross amounts set out in Dr. Wharton's lifecare plans constituted $958,896 for Dennis Gries.

remittitur is not timely filed, then the trial court's judgment as to Dennis Gries's future medical expenses will be reversed; and his claim remanded to the trial court for a new trial.

### Evidence of Lost Earnings

In Issue No. 2C, appellants contend that the trial court erred in admitting evidence of Dennis Gries's lost earnings with respect to his recovery for both past and future lost earning capacity. The jury awarded Dennis Gries $150,000 for past lost earning capacity and $400,000 for future lost earning capacity. Appellees offered testimony from Shannon Shipp in support of the claim for lost earning capacity. Appellants objected to Shipp's testimony regarding Dennis Gries's lost earnings in support of the claim on two grounds: (1) lost earnings is not the proper measure of damages for a lost earning capacity claim and (2) Shipp was not qualified to testify about lost earning capacity because he was not a vocational rehabilitation specialist. We disagree with both contentions.

■ Loss of earning capacity is the plaintiff's diminished capacity to earn a living. *See Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d 21, 35 (Tex.App.-Tyler 2003, pet. denied). Loss of earnings is the loss of actual income due to an inability to perform a certain job that the person held before the injury. *Id.* Appellants are correct in their assertion that loss of earning capacity is the proper measure of damages, not loss of earnings, because even an unemployed person can recover for lost earning capacity. *Id.* However, evidence of loss of earnings is admissible to establish loss of earning capacity. *Id.* at 35–36. When a plaintiff is employed at the time of his or her injury, the extent of his loss can best be shown by comparing his actual earnings before and

after his injury. *See Strauss v. Cont'l Airlines, Inc.*, 67 S.W.3d 428, 436 (Tex. App.-Houston [14th Dist.] 2002, no pet.). Accordingly, the trial court did not abuse its discretion by admitting evidence of Dennis Gries's lost wages in support of his claim for loss of earning capacity.

■ With respect to Shipp's testimony, appellants have not cited any authority requiring an expert testifying in support of a claim for lost earning capacity to be a vocational rehabilitation specialist. Shipp is an economist that used information provided by Dennis Gries and other sources to calculate the present value of the claim for loss of past and future earning capacity. Dennis Gries served as a colonel in the Air National Guard. In this regard, Dennis Gries testified that he was the top human resource expert in the Air National Guard. Dennis Gries advised Shipp that he would be retiring two years earlier than he had originally intended because of his injury. Dennis Gries also provided Shipp with information regarding his opportunity for employment after retiring from the military. Given Dennis Gries's background and expertise in human resources, we conclude that the trial court did not abuse its discretion in admitting Shipp's calculation of Dennis Gries's lost earning capacity based upon information Dennis Gries provided to Shipp. We additionally conclude that the jury's damage awards for loss of earning capacity were supported by competent evidence because the findings are consistent with Shipp's calculations. Appellants' Issue No. 2C is overruled.

### Evidence of Appellants' Negligence

■ In Issue No. 2D, appellants assert that the trial court erred in admitting evidence of their negligence in light of their written stipulation of negligence. We disagree. While appellants stipulated to the issues of negligence and proximate cause,

they did not stipulate to the manner in which responsibility should be apportioned between them. Additionally, appellants did not stipulate to Hutton's liability for exemplary damages. Evidence of appellants' negligence was relevant to these issues. Accordingly, the trial court did not abuse its discretion in admitting this evidence. Appellants' Issue No. 2D is overruled.

### Evidence of Post–Accident Events

■■■■■■ Appellants' Issue No. 2E concerns the admission of evidence of events occurring after the accident. They assert that evidence of their post-accident conduct is irrelevant to issues concerning the cause of the accident or appellees' damages. We disagree. Appellees sought to recover exemplary damages from Hutton. In determining the amount of exemplary damages to be awarded, the factfinder must consider the following factors outlined in *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981): (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety. Post-accident conduct is relevant to the jury's consideration of the *Kraus* factors. *See White v. Sullins*, 917 S.W.2d 158, 162 (Tex.App.-Beaumont 1996, writ denied). Appellants' Issue No. 2E is overruled.

### Evidence of Christian's Death

■■■ In Issue No. 2F, appellants argue that the trial court erred in permitting appellees to present evidence that Christian and her occupant died as a result of the collision. They contend that this evidence was irrelevant because Christian's claims were settled prior to trial. Appellants argue that the evidence of the deaths served no purpose other than to unfairly prejudice appellants. We disagree. Christian's conduct with respect to the accident was a focal point of the evidence presented at trial. Evidence that Christian and her occupant died in the collision provided the jury with the reason why they did not testify at trial. The trial court did not abuse its discretion in admitting this evidence. Appellants' Issue No. 2F is overruled.

### Videotaped Deposition Expenses Taxed as Court Costs

■■■■ Appellants assert in Issue No. 3 that the trial court erred in taxing the costs of videotaped depositions as court costs. Appellees filed a pretrial motion seeking to have these expenses taxed as court costs. Appellants preserved error on this issue by opposing the pretrial motion. The court held in *Shaikh v. Aerovias de Mexico*, 127 S.W.3d 76, 81–82 (Tex. App.-Houston [1st Dist.] 2003, no pet.), that the costs of videotaped depositions are not taxable as court costs. We agree. The term "costs" usually refers to fees and charges required by law to be paid to the courts or some of their officers, and the amount is fixed by statute or the court's rules. *Shaikh*, 127 S.W.3d at 82. The expense of videotaped depositions is not taxable as court costs under the applicable statutes and rules. While the trial court has discretion to allocate taxable court costs among the parties, this power does not include the power to tax items normally not allowed. *Id.* Appellants' third issue is sustained. The trial court's judgment is modified to reduce the taxable court costs assessed against appellants from $10,199.74 to $7,730.74.

### Sufficiency of the Evidence of Gross Negligence

■■■■ Appellants challenge the legal and factual sufficiency of the evidence sup-

porting the jury's affirmative finding of gross negligence on the part of Hutton in Issue No. 4A. Appellees were required to prove that Hutton's actions constituted gross negligence by clear and convincing evidence. TEX. CIV. PRAC. & REM.CODE ANN. § 41.003(a) (Vernon 2008). In reviewing the legal sufficiency of the evidence supporting a finding that must be proved by clear and convincing evidence, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *Diamond Shamrock Refining Co. v. Hall*, 168 S.W.3d 164, 170 (Tex.2005); *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004); *In re J.F.C.*, 96 S.W.3d 256, 264–65 (Tex.2002). For this review, we must consider all the evidence and not just the evidence favoring the verdict. *City of Keller*, 168 S.W.3d at 817. The evidence is legally insufficient when no reasonable factfinder could form a firm belief or conviction that the matter to be proven is true. *Diamond Shamrock*, 168 S.W.3d at 170; *In re J.F.C.*, 96 S.W.3d at 266. For factual sufficiency challenges, the question is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the defendant is guilty of gross negligence. *In re C.H.*, 89 S.W.3d 17, 18–19, 25 (Tex.2002).

Gross negligence consists of both an objective element and a subjective element. *See Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex.2001). To establish gross negligence, a plaintiff must prove by clear and convincing evidence (1) that, when viewed objectively, the defendant's acts or omissions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and (2) that the defendant had an actual, subjective awareness of the risk involved but nevertheless proceeded with

conscious indifference to the rights, safety, or welfare of others. TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(11) (Vernon 2008).

■ Objectively, the defendant's conduct must involve an extreme risk of harm, a significantly higher threshold than the objective reasonable person test for negligence. *Moriel*, 879 S.W.2d at 22. Viewed objectively from the actor's standpoint, the act or omission complained of must depart from the ordinary standard of care to such an extent that it creates an extreme degree of risk of harming others. *Lee Lewis Const.*, 70 S.W.3d at 784–86; *Universal Servs. Co. v. Ung*, 904 S.W.2d 638, 641 (Tex.1995); *Moriel*, 879 S.W.2d at 21–22. Extreme risk is a function of both the magnitude and the probability of the anticipated injury to the plaintiff. *Moriel*, 879 S.W.2d at 22. Extreme risk is not a remote possibility of injury or even a high probability of minor harm but, rather, the likelihood of serious injury to the plaintiff. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex.1998); *Ung*, 904 S.W.2d at 641; *Moriel*, 879 S.W.2d at 22. The risk must be examined prospectively from the perspective of the actor, not in hindsight. *Moriel*, 879 S.W.2d at 23. "An act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent." *Id.* at 22.

Appellees proffered a great deal of evidence in support of the objective element of gross negligence. Trooper Beverage testified that Hutton's truck-and-trailer-combination weighed over 72,000 pounds and that it constituted an inherently dangerous vehicle while traveling at seventy miles an hour down the highway. He additionally testified that Hutton's act of taking his eyes off the road to retrieve a package of crackers constituted a gross deviation from the appropriate standard of care. Appellees' accident expert, Larry

Dwayne Self, testified that Hutton's actions involved an extreme degree of risk because they caused him to veer into oncoming traffic. Self also pointed out that the weight and speed of Hutton's truck produced almost "12 million foot-pounds of energy" while in motion that would require 300 feet of braking to stop the vehicle. Although Trooper Beverage and Self testified that Hutton's conduct involved an extreme degree of risk considering the weight and speed of his vehicle, their testimony was only evidence that there was an extreme risk of a heavy truck not being able to stop in time and hitting someone.

There is no question that Hutton's act of reaching for a package of crackers in his cab constituted a negligent act that caused him to veer into the oncoming lane of traffic. The critical inquiry under the objective component of gross negligence is whether this negligent conduct created the likelihood of serious injury to appellees. The legislature has mandated that we evaluate the risk from the viewpoint of the defendant at the time the events occurred without viewing the matter in hindsight. There are three factors that weigh significantly in this analysis. The first factor is the remote position of appellees' vehicle in relation to Hutton's truck. Appellees were traveling behind Willhite who was following Hutton. Secondly, Hutton's truck did not make contact with either Christian's vehicle or appellees' vehicle. Lastly, Hutton did not force Christian off the road; Trooper Beverage testified that Christian's vehicle did not leave the paved portion of the road. These facts constitute significant, contrary evidence that reasonable jurors could not have disregarded. *See City of Keller*, 168 S.W.3d at 827. We conclude that no reasonable factfinder could have

formed a firm belief or conviction that, from the prospective viewpoint of Hutton, there was an extreme degree of risk of serious injury to motorists following behind him when his action did not involve a collision of his vehicle with another vehicle or force another vehicle (the Christian vehicle) off the roadway. Hutton's actions were no doubt negligent and blatantly careless, but they simply did not as a matter of law rise to the level of extreme risk necessary to establish gross negligence.

■ Additionally, there is no direct or circumstantial evidence that Hutton had actual awareness of the extreme risk created by his conduct to satisfy the subjective element. *Moriel*, 879 S.W.2d at 22–23. There is no testimony from Hutton about his awareness of the risk involved with his conduct because of appellees' insistence that he invoke his Fifth Amendment privilege against self-incrimination to questions at trial about the accident.[11] Appellees contend that the jury was free to draw negative inferences from Hutton's repeated invocations of the Fifth Amendment. *See* TEX.R. EVID. 513(c); *Tex. Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex.1995) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976)). Although the jury was free to draw a negative inference, a "claim of privilege is not a substitute for relevant evidence." *United States v. Rylander*, 460 U.S. 752, 761, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). Without more, the negative inference that the jury may have drawn cannot rise beyond mere suspicion. *Blake v. Dorado*, 211 S.W.3d 429, 434 (Tex.App.-El Paso 2006,

---

11. In discovery, Hutton declined to answer questions concerning the accident by asserting his Fifth Amendment privilege. Appellees obtained a pretrial ruling preventing Hutton from responding to questions at trial with anything other than an invocation of his Fifth Amendment privilege in compliance with his discovery responses.

no pet.); *see Lozano v. Lozano,* 52 S.W.3d 141, 149 (Tex.2001) (Phillips, C.J., concurring). Consequently, the inference could not be considered as evidence at all, particularly under a clear and convincing evidence standard. *See Blake,* 211 S.W.3d at 434.

The factors listed above that precluded the existence of an extreme degree of risk are also relevant to the subjective element of gross negligence. The remote circumstances surrounding the accident negated the possibility that Hutton had actual awareness that his conduct posed an extreme degree of risk to appellees. Appellants' Issue No. 4A is sustained. The jury's affirmative finding of gross negligence and award of exemplary damages against Hutton are reversed, and judgment is rendered that appellees take nothing on their claim for exemplary damages. We do not reach appellants' Issue No. 4B concerning the sufficiency of the evidence supporting the exemplary damages award in light of our disposition of Issue No. 4A.

### Alleged Emotional Reaction by Trial Court

In Issue No. 5, appellants contend that the trial court improperly showed emotional support for appellees by weeping in the presence of the jury during appellees' counsel's closing argument. Appellants have failed to preserve error on this issue because they did not object to the conduct at the time that it occurred. To preserve error, a timely, specific objection must be made. Rule 33.1(a). An objection is considered timely urged when it is asserted at the earliest opportunity. *See Hoxie Implement Co. v. Baker,* 65 S.W.3d 140, 152 (Tex.App.-Amarillo 2001, pet. denied). Raising the objection for the first time in a motion for new trial does not satisfy the contemporaneous objection rule if the complaint could have been

urged earlier. *St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.,* 974 S.W.2d 51, 53 (Tex.1998). Appellants' Issue No. 5 is overruled.

### Cumulative Error

Appellants assert in Issue No. 6 that the trial court's errors had a cumulative effect requiring reversal. Some reviewing courts have recognized a "cumulative-error doctrine" in situations wherein the record shows multiple errors that in isolation are not reversible but in combination give rise to reversible error. *Univ. of Tex. at Austin v. Hinton,* 822 S.W.2d 197, 205 (Tex.App.-Austin 1991, no writ). The cumulative-error doctrine does not apply in this case because we have not found any errors committed by the trial court that are nonreversible when viewed in isolation. Appellants' Issue No. 6 is overruled.

### This Court's Ruling

The jury's finding of gross negligence and imposition of exemplary damages against Hutton is reversed, and a take-nothing judgment is rendered in favor of appellants on that claim. The award of appellees' past medical expenses is reversed, and that claim is remanded for a new trial. The judgment for court costs is modified from $10,199.74 to $7,730.74 and, as modified, is affirmed. We also affirm the award of Dennis Gries's future medical expenses conditioned on a remittitur in the amount of $175,000. If this remittitur is not filed within fifteen days from the date of this opinion, the trial court's judgment as to Dennis Gries's future medical expenses will be reversed, and that claim will be remanded to the trial court for a new trial. The remainder of the trial court's judgment is affirmed.