

# NUMBER 13-22-00208-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**BRYAN MICHAEL PARKS AND**
**ADS AIR CONDITIONING, INC.,** Appellants,

**v.**

**NANCY MIGL,** Appellee.

---

### On appeal from the 445th District Court
### of Cameron County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Silva and Peña**
**Memorandum Opinion by Chief Justice Contreras**

A Cameron County jury found appellants Bryan Michael Parks and ADS Air Conditioning, Inc. (ADS) liable to appellee Nancy Migl for damages arising from an auto accident. On appeal, Parks and ADS argue: (1) the suit should have been transferred to Victoria County because Cameron County was an improper venue; (2) there is no

evidence to support the award of future medical expenses; (3) the evidence is factually insufficient to support the future medical expenses award; and (4) the pleadings did not "support the jury finding imputing [Parks's] gross negligence to [ADS] and the issue was not tried by consent." We affirm.

## I.    BACKGROUND

According to trial testimony, ADS hired Parks as a driver in 2019 even though he had a substandard driving record. On September 7, 2019, Parks was driving a Chevrolet Express van in DeWitt County as part of his job with ADS when he veered into an oncoming lane and collided with a truck driven by Migl's husband and in which Migl was a passenger. As a result of the collision, 72-year-old Migl lost consciousness and suffered severe injuries, including rib and spinal fractures, which required a month-long hospital stay.[1]

Migl filed suit against appellants on November 13, 2019, alleging claims of negligence and gross negligence and stating that Cameron County was a proper venue because Parks resided there. Migl alleged that ADS was vicariously liable for Parks's negligence as his employer; she further argued that ADS was also independently liable for negligent hiring, training, supervision, and retention. Appellants filed separate answers along with motions to transfer venue on December 6, 2019. After a hearing on September 1, 2021, the trial court signed an order denying the motions to transfer venue.

At trial, which took place from November 16 to 18, 2021, Migl called two expert witnesses, Laura Lampton and Keith Fairchild, to testify regarding her damages. Lampton

---

[1] Migl's husband was also named as a plaintiff in the suit; however, his claims were disposed of prior to trial and he is not a party to this appeal.

2

stated she prepared a "Life Care Plan" for Migl, which she described as "an evaluation or an assessment of an individual following an accident or an injury, to determine future health and medical care needs and the cost of those items."[2] Lampton opined in her Life Care Plan that Migl's injuries would necessitate future medical services—such as follow-ups with her primary care physician and orthopedic surgeon, diagnostic testing, and physical therapy—worth between $614,440 and $656,176. She further opined that Migl would need "home assistance" services worth $571,060. When asked what "home assistance" entailed, Lampton explained:

> So that is somebody to come in and help her. She has difficulty with cooking, with cleaning, with laundry. Depending on where she has to go, she's sometimes uncomfortable driving. So getting groceries. Running errands. Anything like that. To assist her with that, and replace the services that her husband is now providing for her, or sometimes her daughter.

Lampton stated that she calculated the "home assistance" figure based on information she received from Migl about "what kind of things that she needed help with."

Fairchild then calculated the present value of the services identified by Lampton as follows:

| | | |
|---|---|---|
| Primary Care Physician | $ | 2,399 |
| Orthopedic Specialist | | 2,121 |
| LFT | | 1,774 |
| X-Rays (wrist/hands/knee) | | 2,415 |
| Physical Therapy | | 64,320 |
| Home Assistance – 3 Hours/day | | 83,858 |

---

[2] Lampton stated she is a "certified registered rehabilitation nurse" and a "certified nurse Life Care Planner."

| | |
|---|---|
| Home Assistance – 6 Hours/day | 250,155 |
| Home Assistance – 8 Hours/day | 284,318 |
| Cane | 33 |
| Aleve | 381 |
| Present Value of Total Future Costs= | $ 701,774 |

The jury found both appellants negligent, and it apportioned responsibility for Migl's injuries at 40% for Parks and 60% for ADS. The jury assessed damages against both appellants as follows: $500,000 for past physical pain and mental anguish; $100,000 for future physical pain and mental anguish; $5,000 for past disfigurement; $600,000 for past physical impairment; $400,000 in future physical impairment; $136,853.71 in past medical expenses; $701,744 in future medical expenses; and $50,000 in past loss of consortium. The jury further found that ADS was grossly negligent and it assessed $400,000 in exemplary damages against ADS. Finally, it found that Parks was grossly negligent and it assessed $50,000 in exemplary damages against Parks. The final judgment, dated December 8, 2021, awarded damages in accordance with the jury's verdict, along with pre- and post-judgment interest and costs of court. Appellants filed a motion for new trial raising various grounds, which the trial court denied.[3] This appeal followed.

## II. DISCUSSION

### A. Motion to Transfer Venue

By their first issue, appellants argue the trial court erred by denying their motions to transfer venue.

---

[3] The trial court initially signed an order on January 31, 2022, granting appellants' motion for new trial on grounds corresponding to issues 2, 3, and 4 raised in this appeal. However, it later granted the Migls' motion for reconsideration, vacated the January 31, 2022 order, and denied the motion for new trial in its entirety.

## 1. Applicable Law & Standard of Review

In general, plaintiffs are allowed to choose venue first, and the plaintiff's choice cannot be disturbed as long as suit is initially filed in a county of proper venue. *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 260 (Tex. 1994); *Shamoun & Norman, LLP v. Yarto Int'l Grp., LP*, 398 S.W.3d 272, 287 (Tex. App.—Corpus Christi–Edinburg 2012, pet. dism'd). A trial court must consider all venue facts pleaded by the plaintiff as true unless they are specifically denied by an adverse party. TEX. R. CIV. P. 87(3)(a). Once an adverse party specifically denies venue facts, the plaintiff must then respond with prima facie proof of those facts. *Id.* "Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." *Id.* At the trial court level, this prima facie proof "is not subject to rebuttal, cross-examination, impeachment[,] or even disproof." *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex. 1993); *Shamoun & Norman*, 398 S.W.3d at 287.

"Proper venue" means: (1) the mandatory venue as provided by statute; or (2) if there is no mandatory venue, the venue provided under the general venue statute or the permissive venue provisions of subchapter C of civil practice and remedies code chapter 15. TEX. CIV. PRAC. & REM. CODE ANN. § 15.001(b). The general venue statute states that all lawsuits shall be brought:

(1)    in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;

(2)    in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person;

(3)    in the county of the defendant's principal office in this state, if the defendant is not a natural person; or

5

(4)     if Subdivisions (1), (2), and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action.

*Id.* § 15.002(a). Venue may be proper in more than one county under the general, mandatory, or permissive venue rules. *GeoChem Tech Corp. v. Verseckes*, 962 S.W.2d 541, 544 (Tex. 1998).

We review the denial of a motion to transfer venue de novo. *Wilson*, 886 S.W.2d at 261. "In determining whether venue was or was not proper, the appellate court shall consider the entire record, including the trial on the merits." TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(b). "[I]f there is probative evidence in the record to support the trial court's determination, the appellate court should defer to the trial court, even if the preponderance of the evidence is to the contrary." *Fortenberry v. Great Divide Ins.*, 664 S.W.3d 807, 811 (Tex. 2023). However, when the issue is considered on appeal, conclusive evidence to the contrary can "destroy the probative evidence." *Chiriboga v. State Farm Mut. Auto. Ins.*, 96 S.W.3d 673, 678 (Tex. App.—Austin 2003, no pet.); *Rosales v. H.E. Butt Grocery Co.*, 905 S.W.2d 745, 750 (Tex. App.—San Antonio 1995, writ denied); *see Ruiz*, 868 S.W.2d at 757 (observing that "[t]he procedure mandated by this statute is fundamentally flawed because it allows appellate review of venue on a basis different from that on which it was decided"); *see also Fortenberry*, 664 S.W.3d at 812 ("Despite its peculiarity, this standard of review strikes a balance between the competing interests of preserving the plaintiff's right to select and maintain suit in a county of proper venue and protecting the defendant from fraud or inaccuracy at the pleading stage." (cleaned up)). "On appeal from the trial on the merits, if venue was improper it shall in no event be harmless error and shall be reversible error." TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(b).

## 2. Analysis

The Migls alleged in their petition that Cameron County is a proper venue for their claims against both appellants because Parks resided there at the time of the accident. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(2); *see also id.* § 15.005 ("In a suit in which the plaintiff has established proper venue against a defendant, the court also has venue of all the defendants in all claims or actions arising out of the same transaction, occurrence, or series of transactions or occurrences."). In the motions to transfer included with their answers, appellants specifically denied this allegation, arguing instead that Parks resided in Goliad County since April 1, 2019, including at the time of the accident. The motions argued that the Cameron County address relied upon by the Migls to establish venue "was [Parks's] previous address which was indicated on his Texas Driver's License which had not been changed to reflect his current and proper address in Goliad." Appellants alleged that venue should be transferred to Victoria County because that was the location of ADS's principal office. *See id.* § 15.002(a)(3).

The Migls filed a response to the transfer motions to which they attached several unverified pieces of evidence, including: (1) a copy of Parks's driver's license, issued on November 3, 2017, and with an expiration date of August 17, 2023, listing his address as a residence on West Palmetto Drive in Harlingen, Cameron County; (2) a copy of the police report from the accident, which listed the Harlingen residence as Parks's address; (3) Texas Department of Public Safety records listing the Harlingen residence as Parks's address, and (4) an excerpt from Parks's deposition in which he agreed that the Harlingen address was listed on his driver's license at the time of the accident.[4]

---

[4] Parks also stated in his deposition that, when he first moved to Harlingen in 2017, he was pulled over and informed by an officer that he had a "30-day grace period" to change the address on his driver's

7

Subsequently, appellants filed amended answers and motions to transfer. Attached to Parks's amended motion was an unsworn declaration in which he averred that he resided on Scenic Loop Drive in Goliad, Goliad County, on September 7, 2019. Parks conceded that he "previously lived and worked in Cameron County" prior to obtaining employment with ADS but that his "listed address in Cameron County was a house owned by his then[-]girlfriend." He further noted that his W-4 tax form, his I-9 employment eligibility form, and his "Beneficiary Designation Form" each listed his address as the residence in Goliad.[5] Parks later filed a second amended answer and motion to transfer which did not include any attachments.

Appellants first argue that the Migls failed to produce prima facie evidence that venue was proper in Cameron County. They contend that the address on Parks's driver's license, which was issued in 2017, is not prima facie evidence that Parks resided in Harlingen as of 2019, when the accident occurred. We disagree. Parks's driver's license, which was undisputedly valid at the time of the accident, listed the Harlingen address as his residence.[6] And Parks gave the license to police at scene of the accident without advising them that the address shown thereon was outdated or incorrect.[7] *See Garcia v. Garza*, 70 S.W.3d 362, 366 (Tex. App.—Corpus Christi–Edinburg 2002), *rev'd on other*

_____

license, and he did so.

[5] The forms themselves do not appear in the record.

[6] As noted, the evidence attached to Migl's response to the transfer motion was not verified or supported by an affidavit. *See* TEX. R. CIV. P. 87(3)(a). However, appellants did not argue at the trial court, and they do not argue on appeal, that Migl's evidence does not constitute "prima facie proof" for this reason. Accordingly, we do not address that issue. *See* TEX. R. APP. P. 47.1.

[7] Texas law enforcement officers are required to obtain "the driver's current residence address" when completing a crash report. *See* TEX. DEP'T OF TRANSP., *Instructions to Police for Reporting Crashes* 68 (2003), https://cris.dot.state.tx.us/public/Crash-resource/docs/PoliceInstructions.pdf (last visited Nov. 13, 2023); *see also* TEX. TRANSP. CODE ANN. § 550.063.

*grounds*, 137 S.W.3d 36 (Tex. 2004). Moreover, if Parks did in fact change his residence in April 2019, then it was legally incumbent upon him to notify the Texas Department of Transportation within thirty days of the change and to obtain "a duplicate license" showing the correct address. *See* TEX. TRANSP. CODE ANN. § 521.054(a); *see also Callahan v. State*, No. 05-07-00780-CR, 2008 WL 2190986, at *1 (Tex. App.—Dallas May 28, 2008, no pet.) (not designated for publication) (affirming conviction for failing to change address on driver's license where appellant "told the officer that the [Bonham] address on his license was his mother's address and that he had been living in Sherman for a couple of months"). It is undisputed, however, that Parks did not do this. A reasonable trier of fact could find from all of this evidence that Parks resided at the Harlingen address not only at the time the license was issued but also at the time of the accident. Thus, probative evidence of proper venue was provided, and the trial court was compelled to deny the motions to transfer. *See Ruiz*, 868 S.W.2d at 757; *Shamoun & Norman*, 398 S.W.3d at 287; *see also In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (noting that the "traditional legal meaning" of "prima facie case" means "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted").

Appellants next argue that, even if the Migls produced prima facie proof of proper venue in Cameron County, such proof was effectively "destroyed" by the evidence produced by appellants in support of their transfer motion and by the trial record. *See Ruiz*, 868 S.W.2d at 757; *Chiriboga*, 96 S.W.3d at 678. They note that, at trial, Parks testified consistently with his unsworn declaration and stated that, as an employee of ADS, he commuted from his parents' residence in Goliad to ADS's headquarters in Victoria. Further, Parks agreed with the Migls' counsel that he typically took his company-

9

issued van "home" to his parents' residence in Goliad every night.[8]

Texas courts have long acknowledged that a defendant may simultaneously have two different residences for venue purposes. *See GeoChem Tech Corp.*, 962 S.W.2d at 543; *Snyder v. Pitts*, 241 S.W.2d 136, 138–39 (Tex. 1951); *Pearson v. West*, 77 S.W. 944, 945 (Tex. 1904); *In re Estate of Steed*, 152 S.W.3d 797, 803 (Tex. App.—Texarkana 2004, pet. denied) ("A person may establish only one domicile, whereas he or she may have several residences."); *Rosales*, 905 S.W.2d at 748; *see also In re Socorro Indep. Sch. Dist.*, No. 13-09-00500-CV, 2010 WL 1138451, at *4 (Tex. App.—Corpus Christi–Edinburg Mar. 22, 2010, orig. proceeding) (mem. op.). In his declaration, Parks stated that he resided in Goliad on September 7, 2019, but he did not explicitly state that he did not *also* reside in Cameron County on that date. In his trial testimony, Parks stated that he previously lived in Harlingen at his girlfriend's residence and "moved to Victoria" after the relationship ended. But appellants do not direct us to any point in the declaration or the trial record in which Parks testified as to the exact date of his purported move. Even if he did unequivocally testify that he resided only in Goliad and not Harlingen on September 7, 2019, we cannot conclude that such testimony would "destroy" the prima facie proof indicating that he resided in Cameron County on that date. *See Chiriboga*, 96 S.W.3d at 678; *Rosales*, 905 S.W.2d at 750; *see also Fortenberry*, 664 S.W.3d at 811 (noting that even a preponderance of the evidence contrary to the trial court's venue ruling will not support reversal); *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (per curiam) (noting that "the testimony of an interested witness, such as a

_____

[8] Migl suggests that Parks's venue evidence, including his unsworn declaration, was not properly before the trial court because it was not attached to his second amended answer and motion to transfer. For purposes of this analysis, we assume but do not decide that the evidence was properly before the trial court.

party to the suit, though not contradicted, does no more than raise a fact issue to be determined by the jury" except when the testimony "is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon").[9]

For the foregoing reasons, appellants' first issue is overruled.

## B.     Future Medical Expenses

By their second issue, appellants contend there was no evidence to support the jury's award of $701,744 in damages for future medical expenses. By their third issue, they argue the evidence was factually insufficient to support the award. We address the issues together.

### 1.     Applicable Law & Standard of Review

A claim that no evidence supports a verdict is a challenge to the legal sufficiency of the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) (noting that evidence is legally insufficient if the record shows: (1) a complete absence of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact). In a legal sufficiency review, "we consider whether the evidence at trial would enable a reasonable and fair-minded fact finder to reach the verdict under review." *Gunn v. McCoy*,

---

[9] Migl argues in the alternative that appellants "waived their right to transfer venue due to a delay of nearly 21 months in obtaining a hearing on the motion[s]." *See* TEX. R. CIV. P. 87(1) ("The movant has the duty to request a setting on the motion to transfer."); *Whitworth v. Kuhn*, 734 S.W.2d 108, 111 (Tex. App.—Austin 1987, no writ) (noting, in the context of a motion to transfer venue, that "a movant may not sit on his rights indefinitely without incurring waiver"). She further notes that, pursuant to the agreement of both appellants, a partial final judgment was rendered disposing of the claims made against her husband. We need not address the waiver argument in light of our conclusion.

11

554 S.W.3d 645, 658 (Tex. 2018). We consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 827.

"When we review factual sufficiency, we consider and weigh *all* of the evidence and will set aside the verdict only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.* at 826. In conducting a factual sufficiency review, "a court must not merely substitute its judgment for that of the jury." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Under both sufficiency standards, "the jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony." *Id.*

In general, the jury has discretion to award damages within the range of evidence presented at trial. *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002).

> [I]n order to recover future medical expenses, a plaintiff is required to show there is a reasonable probability that medical expenses resulting from the injury will be incurred in the future and then show the reasonable costs of such care. It is within the jury's sound discretion to determine what amount, if any, to award in future medical expenses. Because no precise evidence is required, the jury may award such damages based on the nature of the injury, the medical care rendered before trial, and the condition of the injured party at the time of trial.

*Pilgrim's Pride Corp. v. Cernat*, 205 S.W.3d 110, 121 (Tex. App.—Texarkana 2006, pet. denied) (internal citations omitted).

### 2. Analysis

Fairchild testified that the present value of the services identified in Lampton's Life Care Plan was $628,331 for home assistance services and $73,443 in total for the other future costs. The sum of these figures—$701,744—is equal to the amount awarded by the jury for future medical expenses. Appellants argue, however, that the "home

12

assistance" costs are properly characterized as physical impairment damages, not future medical expenses. And because the jury awarded $400,000 in future physical impairment damages in addition to the future medical costs, appellants contend the award of "home assistance" costs as future medical expenses resulted in an impermissible double recovery. *See Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) (per curiam) (noting that a "double recovery exists when a plaintiff obtains more than one recovery for the same injury").

Appellants cite *Matbon v. Gries*, in which an orthopedic surgeon prepared a life care plan for the injured appellees which included "projected costs for them to relocate from their home in Colorado Springs, Colorado, to a new, specially built home in San Antonio" and "costs for a financial planner to help appellees manage the large judgment they anticipated receiving." 288 S.W.3d 471, 483 (Tex. App.—Eastland 2009, no pet.). The Eastland court of appeals held the trial court "abused its discretion in permitting evidence of the projected costs of these items as recoverable future medical expenses." *Id.* The court noted that, had the expert testified that appellees "needed to live in a nursing home as a result of their physical limitations," or that appellees needed to make modifications to their existing home "to make it handicap-accessible," those costs would likely be recoverable. *Id.* But the recovery of "[t]he cost of relocating to a new city and constructing a new home" is "problematic" because "it necessarily involves issues dealing with the plaintiff's personal tastes and preferences in housing." *Id.* (noting that "[t]he issue is particularly problematic in this case because [the expert]'s calculations do not include an offset for the value of appellees' current home"). The court observed that, though "the purpose of tort damages is to make the claimant whole," "a recovery for the cost of

13

relocating and constructing a new home exceeds this goal." *Id.*

In response, Migl argues that Lampton's testimony was not the only evidence supporting the award of future medical expenses. She points to her own testimony that she was still in pain at the time of trial, that she was still being treated by physicians for her injuries, that she would require steroid injections and additional surgery in the future, that she still had trouble with balancing and walking, and that the pain from her injuries had gotten worse over time. *See Pilgrim's Pride Corp.*, 205 S.W.3d at 121. Migl also points to testimony by Daniel Dugi, M.D., one of her treating physicians, that the conditions she acquired as a result of the accident were not resolved as of the time of trial.

Additionally, Migl cites authority establishing that "home assistance" costs, such as those listed in Lampton's life care plan, are specifically recoverable as future medical expenses. For example, in *Brazos Contractors Development, Inc. v. Jefferson*, the court of appeals found legally and factually sufficient evidence to support an award of $500,000 in future medical expenses where expert testimony established the appellee "would require assistance for the remainder of his life with personal hygiene, housekeeping, and activities of daily living," and two physicians recommended appellee "reside in an assisted-living environment." 596 S.W.3d 291, 312 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). And in *Rentech Steel, L.L.C. v. Teel*, the court of appeals found legally and factually sufficient evidence to support an award of $1,000,000 in future medical expenses where a life care planner calculated the appellee's "future medical and related expenses to be $2,925,299.89, which included $1,982,110 for home maintenance, a bookkeeper, a housekeeper, and a home health aide." 299 S.W.3d 155, 164 (Tex. App.—

Eastland 2009, pet. dism'd).

Migl further contends the separate awards for physical impairment damages and home assistance costs did not constitute a double recovery because the amounts were intended to compensate for different injuries. *See Waite Hill Servs., Inc.*, 959 S.W.2d at 184. According to Migl, the future medical costs award was intended to "reimburse for what will be incurred and paid to others," whereas the physical impairment award was intended "to compensate for the loss of enjoyment of life itself." She argues that, while the award of future medical costs was supported by the testimony of Lampton and Fairchild, the award of future physical impairment damages was supported by her testimony at trial that she can no longer do certain activities which she engaged in regularly prior to the accident, such as helping her husband handle bales of hay and plant vegetables, getting on her hands and knees to clean, and cooking with a frying pan.

We agree with Migl that the award of $701,744 in future medical expenses was supported by legally and factually sufficient evidence. The case law establishes that the types of expenses identified by Lampton as "home assistance services" are recoverable as future medical expenses. *See Brazos Contractors*, 596 S.W.3d at 312; *Rentech Steel*, 299 S.W.3d at 164. Unlike in *Matbon*, these expenses do not necessarily involve Migl's personal tastes and preferences, nor does the award of these costs as damages exceed the goal of making the claimant whole. *See Matbon*, 288 S.W.3d at 483. And appellants do not dispute that, if "home assistance" expenses of this type are recoverable under the law, the expert testimony was sufficient to support the amount of the jury's award.

We further find that the award was not an impermissible double recovery. As Migl notes, though appellants argue the award of $400,000 in future physical impairment

15

damages constitutes a double recovery, they do not explicitly contest the sufficiency of the evidence to support that award. "Physical impairment, also called the 'loss of enjoyment of life,' encompasses the loss of the injured party's former lifestyle." *Brazos Contractors*, 596 S.W.3d at 312. To receive damages for physical impairment, the plaintiff must show "(1) he incurred injuries that are distinct from, or extend beyond, injuries compensable as pain and suffering, loss of earning capacity, or other damages elements; and (2) these distinct injuries have had a substantial effect." *Id.*; *see Golden Eagle Archery, Inc.*, 116 S.W.3d at 772 (noting that "the effect of any physical impairment must be substantial and extend beyond any pain, suffering, mental anguish, lost wages or diminished earning capacity"); *Rosenboom Machine & Tool v. Machala*, 995 S.W.2d 817, 826 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (finding evidence legally and factually sufficient to support award of future physical impairment damages where record indicated appellee "enjoyed, to say the least, an active lifestyle" and "engaged in many daily activities" which she was unable to perform as a result of her injuries); *see also City of Brownsville v. Ahumada*, No. 13-14-00265-CV, 2015 WL 4116731, at *4 (Tex. App.—Corpus Christi–Edinburg July 2, 2015, no pet.) (mem. op.) ("Physical impairment can be demonstrated by limitations in the physical range of motion, pain while performing activities, weakness or loss of strength, limitations of activities, difficulty driving, and trouble sleeping.").

Here, the jury was instructed in the charge not to "compensate twice for the same loss, if any," and we presume the jury followed the court's instructions unless the record shows otherwise. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 862 (Tex. 2009) (citing *Golden Eagle Archery, Inc.*, 116 S.W.3d at 771). Appellants contend

16

the record shows the jury disobeyed this instruction, but we disagree. Unlike the award of future medical expenses, there is nothing in the record indicating that the award of $400,000 in future physical impairment damages was based on the testimony of Lampton or Fairchild. Instead, the award was supported by other evidence describing a separate injury, including Migl's own testimony regarding her inability to perform certain daily tasks as a result of the accident.

For the foregoing reasons, we overrule appellant's second and third issues.

## C.     Sufficiency of Pleadings

By their fourth issue, appellants argue that "[t]here are no pleadings to support the jury finding imputing" Parks's gross negligence to ADS. *See* TEX. R. CIV. P. 301 (providing that, after trial, the court must render a judgment that "conform[s] to the pleadings, the nature of the case proved and the verdict, if any," and is "so framed as to give the party all the relief to which he may be entitled either in law or equity"). They further argue that the issue was not tried by consent. *See* TEX. R. CIV. P. 67 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). Accordingly, appellants ask that we reverse the award of exemplary damages against ADS and remand for a new trial. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a) (stating that exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the complained-of harm resulted from fraud, malice, or gross negligence); *see also id.* § 41.001(11) (defining "gross negligence" as "an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm

17

to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others").

### 1. Applicable Law & Standard of Review

Texas employs a fair notice standard for pleadings in civil cases. *See* TEX. R. CIV. P. 45(b) (requiring a party's pleadings to give "fair notice to the opponent"); TEX. R. CIV. P. 47(a) (requiring a plaintiff's pleadings to give "fair notice of the claim involved"). Under this "relatively liberal" standard, "a petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim." *In re Odebrecht Constr., Inc.*, 548 S.W.3d 739, 746 (Tex. App.—Corpus Christi–Edinburg 2018, orig. proceeding) (first citing *Kopplow Dev., Inc. v. City of San Antonio*, 399 S.W.3d 532, 536 (Tex. 2013); and then citing *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982)). The test for determining whether a petition provides fair notice is whether the opposing party can ascertain from the pleading the nature and basic issues presented by the controversy and what evidence might be relevant. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224–25 (Tex. 2017); *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007); *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000). In other words, we ask "whether the pleadings have provided the opposing party sufficient information to enable that party to prepare a defense or a response." *In re Odebrecht Constr.*, 548 S.W.3d at 746 (first citing *Parker*, 514 S.W.3d at 224; then citing *Kopplow Dev.*, 399 S.W.3d at 536; and then citing *Roark*, 633 S.W.2d at 810).

Under the fair notice standard, we look to the pleader's intent, and a pleading may be found sufficient "even if some element of a cause of action has not been specifically

alleged" because "[e]very fact will be supplied that can be reasonably inferred from what is specifically stated." *Id.* (first citing *Roark*, 633 S.W.3d at 809; then citing *In re Lipsky*, 460 S.W.3d at 590; and then citing *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993) (op. on reh'g)); *see Aldous v. Bruss*, 405 S.W.3d 847, 857 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("It is not a valid objection to generally complain that the pleading does not set out enough factual details if fair notice of the claim is given."). "When there are no special exceptions," as here, "a petition will be construed liberally in favor of the pleader." *Roark*, 633 S.W.2d at 809. "[H]owever, we cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain." *Flowers v. Flowers*, 407 S.W.3d 452, 458 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

The trial court has discretion to determine whether pleadings include sufficient allegations to give fair notice of a claim or requested relief. *See Montes v. Filley*, 359 S.W.3d 260, 264 (Tex. App.—El Paso 2011, no pet.); *see also In re J.J.G.,* No. 13-22-00002-CV, 2023 WL 2422493, at *3 (Tex. App.—Corpus Christi–Edinburg Mar. 9, 2023, no pet.) (mem. op.).

### 2. Live Pleadings and Jury Charge

The Migls' live petition contained the following factual allegations specifically against ADS:

> 20. [ADS] entrusted its motor vehicle to [Parks], who was a careless, reckless, incompetent, and/or unqualified driver. [Parks] was either not adequately trained regarding the use and operation of the express van or he was actually aware that his actions in failing to pay attention while driving, failure to properly pass a vehicle, to operate his vehicle on the wrong side of the roadway, failing to timely apply the brakes, and failing to take proper evasive action were unsafe actions that should have been known and appreciated by a motor vehicle driver. [Parks] operated the express van in an unsafe manner in such a way that the express van presented an unreasonable risk

19

of serious injury. [Parks's] negligent acts and/or omissions were the direct and proximate cause of the wreck, as were the various negligent actions and/or omissions of [ADS].

21. More specifically, [ADS] knew, or through the exercise of reasonable care should have known, that [Parks] was a careless, reckless, incompetent and/or unqualified driver or was not adequately trained regarding the proper use and operation of the express van. [ADS] was independently negligent in its hiring, training, supervision, management, and/or retention of [Parks] and in negligently entrusting the commercial vehicle to him. [ADS] owed a duty to use ordinary care in the hiring, training, supervision, management, and retention of their employees or statutory employees—[Parks], specifically—that corporations generally would use under the same or similar circumstances. [ADS] breached this duty and was negligent by the following acts or omissions:

a. [ADS] failed to use the reasonable care that a company would use in hiring, training, supervising, managing, and/or retaining their employee or statutory employee; and knew, or through the exercise of reasonable care, should have known that [Parks] was unqualified and/or incompetent to operate a motor vehicle on the public roadways;

b. [ADS] failed to implement appropriate defensive driving, accident avoidance, and routing policies with regard to the commercial van being operated on the date of the occurrence; and

c. [ADS]'s safety management system had failed with regard to training [Parks] and similar drivers.

. . . .

23. Pleading further and in the alternative, the conduct of Defendants as described above, either jointly or individually, rises to the level of gross negligence as that term is defined under §[ ]41.001(11) of the Civil Practice and Remedies Code; and was the proximate cause of the severe injuries and damages complained of by Plaintiffs, and for which Plaintiffs are entitled to recover punitive damages.

24. At the time of the tragic incident, and for a considerable time prior to it, the acts and/or omissions by Defendants are such that, when viewed objectively from the standpoint of Defendants, involved an extreme degree of risk, considering the probability and the magnitude of the potential harm to others. Defendants had actual, subjective awareness of the risks involved, but nevertheless

20

proceeded with conscious indifference to the rights, safety, or welfare of others, including the Migls.

25. The gross negligence of Defendants proximately resulted in the serious and permanent injuries and damages complained of by Plaintiffs.

. . . .

26. [ADS], as [Parks's] employer on the date of the incident, is liable under the doctrine of respondeat superior in that the actions and/or omissions of [Parks] were performed in the course and scope of his employment with [ADS] and while under the dispatch of [ADS].

Following trial, over ADS's objections that the accompanying instructions were unsupported by the pleadings, the court included the following as question eight of the jury charge:

Do you find by clear and convincing evidence that the harm to Nancy Migl resulted from gross negligence attributable to ADS Air Conditioning, Inc.?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Gross Negligence" means an act or omission by Bryan Michael Parks,

1. which when viewed objectively from the standpoint of Bryan Michael Parks at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

2. of which Bryan Michael Parks has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

You are further instructed that ADS Air Conditioning, Inc. may be grossly negligent because of an act by Bryan Michael Parks, but only if—

1. Bryan Michael Parks was unfit and ADS Air Conditioning, Inc. was reckless in employing him.

The jury answered the question in the affirmative and, in response to question nine of the charge, assessed exemplary damages of $400,000 against ADS.

21

### 3.    Analysis

Appellants argue that question eight was not supported by the pleadings because Migl's live petition alleged that ADS was grossly negligent only due to its own independent acts and omissions, not because it is vicariously liable for Parks's gross negligence. ADS notes that, although the petition accused ADS of gross negligence with respect to its hiring, supervision, and retention of Parks, the Migls eventually abandoned that specific claim and it was not submitted to the jury.

We find that, even though the gross negligence section of the Migls' live petition focused on ADS's independent acts and omissions, it also gave fair notice that Migl was seeking to hold ADS vicariously liable for Parks's gross negligence. The Texas Supreme Court has held that "[p]unitive damages can properly be awarded against a master or other principal because of an act by an agent if . . . the agent was unfit and the principal was reckless in employing him." *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997) (quoting RESTATEMENT OF TORTS § 909 (1939)). As Migl emphasizes on appeal, neither appellant filed special exceptions to her live petition; therefore, we must construe those allegations liberally. *See Roark*, 633 S.W.2d at 809. Those allegations included the following: (1) Parks was a "careless, reckless, incompetent, and/or unqualified driver"; (2) ADS knew or should have known that Parks "was a careless, reckless, incompetent[,] and/or unqualified driver" when it hired him; (3) ADS "should have known that [Parks] was unqualified and/or incompetent to operate a motor vehicle on the public roadways"; (4) "the acts and/or omissions by Defendants are such that, when viewed objectively from the standpoint of Defendants, involved an extreme degree of risk, considering the probability and the magnitude of the potential harm to others";

22

(5) "Defendants had actual, subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including the Migls"; and (6) "the actions and/or omissions of [Parks] were performed in the course and scope of his employment with [ADS]."

Although the petition did not use the exact words "unfit" or "reckless" with respect to ADS's employment and retention of Parks, these factual allegations, liberally construed, alerted ADS that Migl was seeking to hold it vicariously liable for Parks's gross negligence, and it provided ADS with sufficient information to enable it to prepare a relevant defense. *See In re Odebrecht Constr.*, 548 S.W.3d at 746. Appellants observe correctly that "providing only fair notice of claims does not provide fair notice of the essential factual allegations supporting those claims." *Kinder Morgan SACROC, LP v. Scurry County*, 622 S.W.3d 835, 849 (Tex. 2021). But here, the pleadings provided ADS with fair notice as to the "essential factual allegations" supporting Migl's claims. We overrule appellants' fourth issue.

### III.    CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
16th day of November, 2023.

23